**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 91-7134**
_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**INVESTMENT ENTERPRISES, INC., d/b/a**
**Great Western Litho & Bindery,**
**DONALD P. BROWNING,**
**CALIFORNIA PUBLISHERS LIQUIDATING CORPORATION,**
**MICHAEL WARNER, VIDEO TEAM, INC. and**
**SUSAN C. COLVIN,**

**Defendants-Appellants.**

_____

**No. 91-7266**
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

CALIFORNIA PUBLISHERS LIQUIDATING CORP.,
VIDEO TEAM, INC., DONALD P. BROWNING,
and MICHAEL WARNER,

Defendants-Appellees.

_____

Appeals from the United States District Court
for the Northern District of Texas
_____

(December 15, 1993)

Before JONES AND DeMOSS, Circuit Judges and BARBOUR[*], District
Judge.

EDITH H. JONES, Circuit Judge:

_____

[*] Chief Judge of the Southern District of Mississippi,
sitting by designation.

This obscenity case arose from an undercover sting operation jointly managed by police in Dallas and the Los Angeles office of the Federal Bureau of Investigation.[1] The operation culminated in a jury's finding defendants California Publishers Liquidating Corporation ("CPLC"), Donald P. Browning, Susan Colvin, Video Team, Investment Enterprises, Inc. (d/b/a Great Western Litho & Bindery) ("Great Western"), and Michael Warner guilty of two counts of interstate transportation of obscene materials in violation of 18 U.S.C. §1462 (1988) and aiding and abetting the commission of the §1462 offense and one count of conspiring to violate §1462. After the jury returned its guilty verdicts and pursuant to the forfeiture provision of 18 U.S.C. §1467(a)(3) (1988), the government sought forfeiture of substantial assets of the defendants, but the district court exercised its discretion under §1467(a)(3) and refused to order any forfeiture.

The defendants appeal their convictions on a multitude of grounds. Having reviewed all of the appellants' arguments, we discuss in detail only the sufficiency of the evidence challenges raised by Warner and Great Western and Warner's argument that the district court erred in giving the jury a deliberate ignorance instruction. The remainder of the discussion focuses on issues posed by the government's appeal of the denial of its forfeiture motion. Review of all the issues leads us to affirm the

---

[1] A more detailed review of the facts may be found in the district court's published opinion denying the government's forfeiture motion. See United States v. Cal. Publishers Liquidating Corp., 778 F.Supp. 1377, 1379 - 1381 (N.D. Tex. 1991).

defendants' convictions, but it is necessary to remand to the district court for it to reconsider forfeiture consistent with the proper construction of §1467(a)(3).

## I.

## OBSCENITY CONVICTIONS

### A. Sufficiency of the Evidence

Defendant/appellants Michael Warner and Great Western argue that the evidence was insufficient to establish that they conspired to ship obscenity in interstate commerce and that they aided and abetted the shipment of obscenity in interstate commerce.[2] This court reviews sufficiency of the evidence challenges to determine whether a reasonable jury could find that the evidence establishes guilt beyond a reasonable doubt. See United States v. Salazar, 958 F.2d 1285, 1291 (5th Cir. 1992), cert. denied, 113 S.Ct. 185 (1992). In evaluating such challenges, we review the evidence -- and all the inferences reasonably drawn from it -- in the light most favorable to the verdict. See id. at 1290-91. Under these established standards, defendants' claims are meritless.

As an initial matter, we note that this review of evidentiary sufficiency as to both the conspiracy and the

---

[2] Warner and Great Western were found guilty of conspiring -- in violation of 18 U.S.C. §371 (1988) -- to violate 18 U.S.C. §1462. Section 1462 makes "knowingly us[ing] any express company or other common carrier, for carriage in interstate or foreign commerce -- (a) any obscene ... motion picture film" punishable by a fine and/or imprisonment. 18 U.S.C. §1462. They were also found guilty on two counts of aiding and abetting the commission of the §1462 offense. 18 U.S.C. § 2.

3

substantive obscenity convictions contemplates that corporations cannot in and of themselves possess a mental state. However, a corporation is criminally liable for the unlawful acts of its agents, provided that the conduct is within the scope of the agent's authority, whether actual or apparent. See United States v. Bi-Co Pavers, Inc., 741 F.2d 730, 737 (5th Cir. 1984). Thus, while Great Western cannot possess the requisite intent to conspire or aid and abet, Michael Warren -- its president and undisputedly authorized agent at all times -- can. His unlawful acts are the basis for Great Western's criminal liability.

As to the merits of defendants' challenge, a reasonable jury could find that Warner and Great Western conspired with the other defendants -- CPLC, Video Team, Colvin, and Browning -- to transport obscene videos in interstate commerce. The district court correctly instructed the jury that for a defendant to be guilty of conspiracy, the government must prove (1) that there was an agreement by two or more persons to violate the law; (2) that the defendant knew of and voluntarily joined the conspiracy; and (3) that overt acts were committed to further the conspirators' purpose. The appellants' only challenge to sufficiency concerns the second of the district court's requirements; Warner argues that he had no knowledge of the unlawful purpose of the conspiracy and had no intent to further it. However, the evidence undercuts Warner's position.

Warner is the president and part owner of Great Western, an entity devoted largely to the production of sexually explicit

4

box covers and other materials for sexually explicit video tapes. Great Western regularly manufactured box covers and printed advertisements for co-defendant Video Team, a wholly owned subsidiary of CPLC dedicated to the distribution of sexually explicit video tapes. More specifically, Great Western manufactured the box covers for "Interracial Anal 1", "Anal Sluts Volume 2", and "Kinky Vision" -- three of the four tapes charged as obscene in the two substantive counts.[3] Furthermore, Warner always examined the finished printing jobs of the sexually explicit box covers. But the evidence linking Great Western and Warner with the conspiracy hardly stops here.

In addition to having an intimate knowledge of the sexually explicit nature of his own printing business, a singularly unsurprising conclusion, Warner is well acquainted with CPLC and its wholly owned subsidiary, Video Team. In fact, CPLC and Video Team are not just important clients, they are the Warner family business. Warner's father founded the predecessor corporation to CPLC, and Warner worked there before going over to Great Western. Warner's brother-in-law, Donald Browning, is the president and part owner of CPLC. Vicki Browning, Warner's sister and Donald's wife, is an employee of Great Western. The two families socialize

---

[3] Count two alleged that "Beyond Taboo" and "Kinky Vision" were obscene, whereas count four alleged that "Interracial Anal 1" and "Anal Sluts Volume 2" were obscene. The jury's verdict found Great Western and Warner guilty on both counts of aiding and abetting the interstate transportation of these obscene videos but without specifying which of the tapes were found obscene. Drawing all reasonable inferences favorable to the verdict, we may assume that as to count two the jury concluded that "Kinky Vision" -- for which Great Western printed the box -- was obscene.

frequently, and Donald Browning met with Warner everyday at his Great Western office *across the street* from CPLC and Video Team.[4]

Not unexpectedly, Warner -- a CPLC board member -- has a significant financial stake in the fortunes of CPLC and its subsidiary Video Team. He earned $75,000 a year from CPLC distributions via a family trust and his interest upon dissolution of the trust would approximate 20% of CPLC and its various holdings. Further, Warner owns a substantial interest in the real property and building housing CPLC and Video Team.

Viewed cumulatively, the evidence is sufficient to prove that Warner, and Great Western through him, knew of the unlawful purpose of the conspiracy to ship the obscene videos interstate and that he joined it with the intent to further its purpose.[5]

---

[4]    Close relationships can be part of the circumstantial evidence from which a jury may infer that the defendant knew of a conspiracy. See Salazar, 958 F.2d at 1294 - 95.

[5]    Warner and Great Western raise First Amendment and Fifth Amendment objections to their conspiracy conviction on the basis that these constitutional provisions require very specific knowledge on the part of the defendants: namely, that the defendants must have known that the videos for which they only printed boxes would be distributed to a community where they would be deemed obscene. Defendants' constitutional objections do not move us.
First, defendants' arguments assume that the only basis for their conspiracy convictions is their role in printing the boxes for the obscene videos. As the evidence described in part I.A. suggests, this is false. Second, knowledge that the materials are sexually explicit is the only scienter requirement under 18 U.S.C. §1462 (1988). See United States v. Hill, 500 F.2d 733, 740 (5th Cir. 1974), cert. denied, 490 U.S. 952 (1975). Furthermore, knowledge of the sexually explicit nature of the materials as the required scienter has been upheld against similar challenges to 18 U.S.C. §1461 (1988) -- a criminal provision making the mailing of obscene materials punishable by fine and/or imprisonment. See Hamling v. United States, 418 U.S. 87, 123 (1974). The fact that the defendants were prosecuted for conspiring to violate §1462 --

6

With regard to the aiding and abetting counts, this court has observed that typically the same evidence will support both a conspiracy and an aiding and abetting conviction. See Salazar, 958 F.2d at 1292 (citation omitted). Thus, as to the two substantive obscenity offense counts, the same evidence that proved Warner and Great Western conspired to violate §1462 is sufficient to support their conviction for aiding and abetting the §1462 violation. See id.

**B. Deliberate Ignorance Instruction**

Near the conclusion of the instructions to the jury, the district court provided the following deliberate ignorance instruction:

> You may find that a [d]efendant had knowledge of a fact if you find that the [d]efendant deliberately closed his or her eyes to what would otherwise have been obvious to her. While knowledge on the part of the [d]efendant cannot be established merely by demonstrating that the [d]efendant was negligent, careless or foolish, knowledge can be inferred if the [d]efendant deliberately blinded himself or herself to the existence of a fact.[6]

---

as opposed to violating §1462 directly -- does not change the analysis. Finally, to accept appellants' arguments would allow all such defendants to avoid prosecution "by simply claiming that [they] had not brushed up on the law." Id. at 123.

[6]    Immediately preceding the deliberate ignorance instruction to the jury, the district court defined "knowingly":
> The word "knowingly," as that term has been used in these instructions, means that the act was done voluntarily and intentionally and not because of mistake or accident. The purpose of adding the word "knowingly" is to ensure that no one will be convicted for an act done because of mistake or accident, or other innocent reason.

The court's deliberate ignorance instruction was not limited in its application to the substantive counts charged; the instruction applied to the conspiracy count as well.

Warner makes two arguments in urging error on the part of the trial court in giving this instruction. First, with regard to the two substantive counts, each charging Warner with aiding and abetting the commission of the §1462 offense, Warner argues that the evidence was not sufficient to support the deliberate ignorance instruction.[7] Second, as to the conspiracy count, Warner urges that the use of a deliberate ignorance instruction is never appropriate in a conspiracy prosecution. Both of appellants' arguments are unconvincing.

The standard of review applied to a defendant's claim that a jury instruction was inappropriate is "whether the court's charge, as a whole, is a correct statement of the law and whether it clearly instructs jurors as to the principles of law applicable to the factual issues confronting them." United States v. August, 835 F.2d 76, 77 (5th Cir. 1987). The district court "may not instruct the jury on a charge that is not supported by evidence." United States v. Ortega, 859 F.2d 327, 330 (5th Cir. 1988), cert. denied, 489 U.S. 1027 (1989). Further, in determining whether the evidence sufficiently supports the charge, the evidence and all reasonable inferences that may be drawn from it are viewed in the

_____

[7] While each count actually charged both a §1462 violation *and* aiding and abetting the §1462 violation, Warner's liability was predicated on an aiding and abetting theory.

8

light most favorable to the government. See United States v. Lara-Velasquez, 919 F.2d 946, 950 (5th Cir. 1990).

Before a deliberate ignorance instruction may properly be given, the evidence at trial must raise two inferences: "the defendant was subjectively aware of a high probability of the existence of the illegal conduct; and ... the defendant purposely contrived to avoid learning of the illegal conduct." See id. at 951 - 52. Warner claims that the evidence at trial on the substantive obscenity offenses simply did not raise these two required inferences. Our necessarily fact-intensive review suggests that the evidence at trial viewed in the light most favorable to the government did support the deliberate ignorance charge as to the substantive counts.

First, the government presented evidence to support the inference that Warner was subjectively aware of the high probability that he was involved in illegal activity.[8] Warner is president and part owner of Great Western, a firm whose dominant business is producing sexually explicit box covers and/or materials for sexually explicit video tapes, although a substantial portion of its business is not sexually related. The firm's clients include CPLC, a firm in the business of distributing sexually explicit materials nationwide since 1973, and Video Team, a wholly owned subsidiary of CPLC dedicated to the distribution of sexually

---

[8]     It should come as no surprise that the same evidence used to raise an inference of Warner's *actual* knowledge will also raise the inference of Warner's subjective awareness. See Lara-Velasquez, 919 F.2d at 952.

9

explicit videotapes. In addition to manufacturing the sexually explicit box covers for Video Team, Great Western also prints the advertisements that accompany Video Team products.

Donald Browning, president and part owner of CPLC, testified that he harbored no doubt that Warner has knowledge of the adult entertainment industry. In fact, Warner has attended adult entertainment conventions to solicit business for Great Western. Significantly, Warner examines the finished printing jobs of the sexually explicit box covers. In short, the district court could reasonably have concluded that the government satisfied the first prong of the deliberate ignorance instruction test.

Second, the evidence at trial supported the inference that, even if he did not actually know of the illegal conduct, Warner purposefully contrived to avoid learning of it.[9] Although he earned $75,000 a year from CPLC distributions via a family trust arrangement, his interest in CPLC would approximate 20% of the firm once the trust was dissolved, and he owned a large part of the real property and building housing CPLC and Video Team, Michael Warner visited the CPLC premises -- across the street from the offices of Great Western -- only twice in the two years preceding the trial. While Warner and Browning saw each other every day, they virtually never met on the premises of CPLC. Although Warner only made the trip across the street twice in two years, his vice president at

---

[9] The defendant's purposeful contrivance to avoid learning of the illegal conduct may be established by either direct or circumstantial evidence. See Lara-Velasquez, 919 F.2d at 952.

Great Western was sent across the street *every week* to collect for printing services rendered.

Warner was a member of the board of CPLC, but he never attended any board meetings. More broadly, despite his significant financial interest in the fortunes of CPLC, Warner never had anything to do with the sales, marketing, or pricing strategies of CPLC. In sum, the jury could have reasonably concluded that the evidence satisfied the second prong of the deliberate ignorance test.

Although this court recognizes that district courts should only give deliberate ignorance instructions sparingly, we conclude there was sufficient evidence to support the district court's careful instruction. This conclusion dispenses only with Warner's arguments as to the substantive obscenity counts. Warner still claims that it is error to give a deliberate ignorance instruction in a conspiracy prosecution. Specifically, Warner argues that he cannot be deliberately ignorant of the object of the conspiracy and also intend to further its purpose as required by the district court's conspiracy charge.[10]

Warner's argument overlooks the fundamental nature of the deliberate ignorance instruction. The instruction serves "to inform the jury that it may consider evidence of the defendant's charade of ignorance as *circumstantial proof of guilty knowledge*." Lara-Velasquez, 919 F.2d at 951 (emphasis added). Viewed this way,

---

[10] The district court's conspiracy instruction appears in full in part I.A. supra.

11

the deliberate ignorance instruction is a particularized circumstantial evidence instruction. See id. (relying on United States v. Manriquez Arbizo, 833 F.2d 244, 248 (10th Cir. 1987)). To the extent that the instruction is merely a way of allowing the jury to arrive at the conclusion that the defendant knew the unlawful purpose of the conspiracy, it is hardly inconsistent with a finding that the defendant intended to further the unlawful purpose.[11]

## II.

## FORFEITURE

### A.   Appealability of an Order Denying Forfeiture Motion

Defendant/appellees[12] maintain that the government is not authorized to appeal the district court's denial of the government's motion for an order of forfeiture pursuant to 18 U.S.C. §1467 (1988). The appellees argue that a forfeiture order is not a "sentence" within the meaning of 18 U.S.C. §3742(b) (1988

---

[11]   As noted earlier, the defendants raise numerous other arguments against their convictions. These arguments include challenges to the district court's finding that the government offered race neutral reasons for striking a black juror, exclusion of a compilation video, giving a "modified" Allen charge, giving a supplemental Pinkerton instruction, failing to investigate an alleged incident of juror misconduct, denying a request of immunity to an expert, and failure to suppress evidence seized pursuant to allegedly defective warrants. While we have thoroughly considered -- and rejected -- these arguments, we do not discuss them further in the opinion.

[12]   Appellees include all of the defendant/appellants with the exception of Great Western. This court granted the government's motion to withdraw its appeal of the denial of the forfeiture order as to Great Western on June 15, 1992.

& Supp. II 1990).[13]  Since §3742(b) by its terms only authorizes the government to appeal a "sentence", appellees claim that the government is without statutory authority to appeal the denial of the forfeiture order below.[14]

That the government has no right of appeal in a criminal case unless a statute expressly grants such a right is well-established.  See United States v. Denson, 588 F.2d 1112, 1125 (5th Cir. 1979) (citing cases), rev'd on other grounds, 603 F.2d 1143 (5th Cir. 1979) (en banc).  A review of the Guidelines Manual and the relevant statutory provisions, however, lead us to conclude that a forfeiture order is a "sentence" for purposes of §3742(b) and thus is appealable.

---

[13]  The statute provides in relevant part:

> The Government, [sic] may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence --
> (1) was imposed in violation of law;
> (2) was imposed as a result of an incorrect application of the sentencing guidelines;
> (3) is less than the sentence specified in the applicable guideline range to the extent that the sentence includes a lesser fine or term of imprisonment, probation, or supervised release than the minimum established in the guideline range, or includes a less limiting condition of probation or supervised release under section 3563(b)(6) or (b)(11) than the minimum established in the guideline range; or
> (4) was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable.

18 U.S.C. §3742(b).

[14]  The Sentencing Reform Act of 1984 provides in 18 U.S.C. §3742(a)-(b) (1988 & Supp. II 1990) for limited appellate review of sentences by specifying when either a defendant or the government may appeal a sentence.  See Mistretta v. United States, 488 U.S. 361, 368 (1988).

1.    How the Guidelines Treat Forfeiture

The Sentencing Guidelines provide that "[f]orfeiture is to be imposed upon a convicted defendant as provided by statute." **United States Sentencing Commission, Guidelines Manual** §5E1.4 (Nov. 1, 1992).   While the commentary to this guideline does not specifically mention forfeiture under §1467, the commentary recognizes that "[f]orfeiture provisions exist in various statutes", id. §5E1.4 commentary at 308, and provides a few examples of such statutory forfeiture provisions. See id. at 308 -09.  By its inclusiveness, §5E1.4 of the guidelines contemplates that forfeiture be imposed upon defendants as provided for under §1467.

Furthermore, the Sentencing Guidelines treat forfeiture as part of the sentence to be imposed upon a defendant.   The introductory commentary to Chapter Five of the Sentencing Guidelines, appropriately entitled "Determining the Sentence", begins by noting that "the guidelines permit the court to impose either imprisonment or some other sanction or combination of sanctions."[15]   Id.   Critically, the commentary continues, "[a] sentence is within the guidelines if it complies with each applicable section of this chapter." Id. As a sentence "within the guidelines" has to comply with every applicable section of Chapter

_____

[15]     As the Supreme Court has recently held, commentary in the Guidelines Manual interpreting or explaining a guideline "is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." Stinson v. United States, ____ U.S. ____, 113 S. Ct. 1913, 1915 (1993).

14

Five, it necessarily includes §5E1.4 on forfeiture.[16]  In short, a §1467 forfeiture order falls within the guideline's treatment of sentences.

2.    Consistency with the Sentencing Reform Act

Appellees nevertheless contend that to afford the government an appeal of a §1467 forfeiture under §3742(b) is inconsistent with certain provisions of the Sentencing Reform Act. Appellees maintain that a forfeiture pursuant to §1467 is not a "sentence" for purposes of §3742(b) because §1467 forfeiture is not specifically mentioned as an order of criminal forfeiture in 18 U.S.C. §3554 (1988).[17]  Yet only forfeitures pursuant to §3554 are authorized sanctions under 18 U.S.C. §3551 (1988 & Supp. II 1990),[18]

---

[16]    Actually, the sentences of the appellee corporations -- CPLC and Video Team -- are determined in compliance with Chapter 8 entitled "Sentencing of Organizations." **United States Sentencing Commission, Guidelines Manual** §8A1.1 (Nov. 1, 1992).  Just like the chapter applicable to non-organizations, Chapter 8 treats forfeitures as part of the sentence.  For instance, the application instructions in Chapter 8 on determining sentences for organizations specifically requires a determination of "the sentencing requirements relating to special assessments, forfeitures, and costs" made by reference to Part E of Chapter 8. See id. §8A1.2(d) (emphasis added).  Significantly, the relevant portion of Part E on forfeiture merely refers the user back to §5E1.4.  See id. §8E1.2.  Because the unmistakable implication of Chapter 8 is -- just as in Chapter 5 -- to treat forfeiture as part of the sentence, we will speak only in terms of Chapter 5 sentencing for the sake of clarity.

[17]    Section 3554 requires a court imposing a sentence under the federal RICO statute or Titles II and III of the Comprehensive Drug Abuse Prevention and Control Act of 1970 to order the forfeiture of property in accordance with the automatic forfeiture provisions of the respective statutes.  18 U.S.C. §3554.

[18]    Section 3551 provides in relevant part that "[a] sanction authorized by section 3554, 3555, or 3556 may be imposed in addition to the sentence required by this subsection."  18 U.S.C. §3551(b) (1988).  The same is true for organizations.  See 18

15

and only §3551 sanctions are made appealable under §3557.[19] Finally, appellees urge that 18 U.S.C. §3557 (1988) implicitly limits appeals under §3742(b) to sentences imposed in accordance with §3551. As such, the government has no statutory basis for appeal.

This reasoning might be compelling but for two flaws. First, section 3551(a) provides in relevant part that "[e]xcept as otherwise specifically provided, a defendant who has been found guilty of an offense described in any Federal statute, ... , shall be sentenced in accordance with the provisions of this chapter". 18 U.S.C. §3551(a) (emphasis added). Second, §3742(b) is not limited to authorizing appeals cross-referenced back to §3557. This fact harmonizes nicely with the §3551(a) proviso. Thus, even assuming that §3551(b) and (c) only authorize sentences with forfeiture limited to the specific types enumerated in §3554,

_____

U.S.C. §3551(c) (1988). Appellees do not concede that §3554 forfeitures are sentences, relying on the "in addition to the sentence" language in §3551 to conclude that even §3554 forfeitures are not sentences. While not necessary to our disposition of this case, we express reservations as to appellees' reading of §3554. First, a reading of §3554 which takes "sentence" to include the forfeitures enumerated in the section would be consistent with the totality of the language in the section, particularly the language which requires the court to order forfeiture "in imposing a sentence on a defendant". 18 U.S.C. §3554. Further, such a reading would be consistent with the well-established understanding of forfeitures as punishment. See, e.g., Austin v. U.S., 113 S.Ct. 2801, 2810 (1993) (noting that forfeiture generally and statutory in rem forfeiture in particular have been historically understood as punishment); U.S. v. Horak, 833 F.2d 1235, 1246 (7th Cir. 1987) (finding that RICO forfeiture is punishment imposed on a guilty defendant).

[19]  In its entirety, section 3557 provides that "[t]he review of a sentence imposed pursuant to section 3551 is governed by the provisions of section 3742." 18 U.S.C. §3557.

16

§3551(a) expressly allows for sentencing where "otherwise specifically provided"; this language is certainly broad enough to include sentencing pursuant to §5E1.4 of the Sentencing Guidelines. As our earlier discussion demonstrated, the guidelines clearly and specifically provide for sentencing to include a §1467 forfeiture.

Contrary to appellees' ingenious argument, a sentence imposing §1467 forfeiture pursuant to §5E1.4 qualifies as a "sentence imposed pursuant to section 3551" and thus its review would be governed by §3742. See 18 U.S.C. §3557. Under §3742(b), the government may appeal in four situations.[20] The government has the statutory authority under §3742(b)(1) to bring this appeal since it alleges that the sentence is in violation of law -- specifically, §1467.[21]

---

[20]    See note 13 supra.

[21]    Appellee Warner raises a double jeopardy objection to the government's ability to appeal the district court's denial of the forfeiture motion. However, it is well-established that double jeopardy does not prevent appellate review of the government's statutorily authorized appeal of a sentence. See United States v. Greenwood, 974 F.2d 1449, 1473 (5th Cir. 1992) (relying on United States v. DiFrancesco, 449 U.S. 117, 132 - 33 (1980)).
    The remaining appellees additionally urge that this appeal should be dismissed on the basis that the Solicitor General authorized the appeal after the notice of appeal was filed by the government. Appellees' objection is without merit. The clear language of §3742(b) allows the government to file a notice of appeal in the district court, but prohibits the government from further prosecuting an appeal of a sentence without certain officials' approval. 18 U.S.C. §3742(b) (1988 & Supp. II 1990). The government has fully complied with these requirements.

17

**B.    Merits of Denial of Forfeiture Motion**

    1.    Statutory Construction

In appealing the denial of its motion for a forfeiture order, the government argues that the district court misconstrued the discretion given it under 18 U.S.C. §1467(a)(3) (1988) and erroneously limited the kind of property subject to forfeiture under that statutory provision.  As the court recognized in its published opinion denying the forfeiture motion, the questions of statutory construction posed are of first impression.[22]  See United States v. Cal. Publishers Liquidating Corp., 778 F.Supp. 1377, 1379 (N.D. Tex. 1991).  We conclude that the government's critique is essentially correct.

A court begins the task of interpreting a statute by looking to the statutory language.  See Mallard v. United States Dist. Court for S. Dist. of Iowa, 490 U.S. 296, 300 – 01 (1989). To that end, the relevant statutory language provides:

> A person who is convicted of an offense involving obscene material under this chapter shall forfeit to the United States such person's interest in ... (3) any property, real or personal, used or intended to be used to commit or to promote the commission of such offense, if the court in its discretion so determines, taking into consideration the

_____

[22]    In one of only two appeals court cases dealing with §1467 forfeiture, the D.C. Circuit did not reach the merits of a First Amendment challenge to the forfeiture provision on the grounds that plaintiffs' claims were not justiciable.  See American Library Assoc. v. Barr, 956 F.2d 1178, 1187 (D.C. Cir. 1992).  In the only other reported case, the Fourth Circuit in dicta upheld §1467 against a First Amendment challenge.  See United States v. Pryba, 900 F.2d 748, 755 (4th Cir. 1990), cert. denied, 498 U.S. 924 (1990).

> nature, scope, and proportionality of the use
> of the property in the offense.

18 U.S.C. §1467(a)(3) (1988).  The statute also requires the trier of fact to determine beyond a reasonable doubt that the property is subject to forfeiture.  18 U.S.C. §1467(e) (1988).

Once the defendant/appellees were found guilty of violating 18 U.S.C. §1462 (1988), an offense "under this chapter" for purposes of §1467(a)(3), the district court submitted the forfeiture issue to the jury.[23]  See Cal. Publishers, 778 F.Supp. at 1381.  The jury returned a special verdict in which it found that two tracts of real property in Los Angeles -- together with the buildings housing the corporate defendants *and their contents* -- and four corporate bank accounts were subject to forfeiture. See id.  The jury did not find that the personal bank accounts of defendant/appellees Michael Warner and Donald Browning were subject to forfeiture.[24]  As has already been noted, the district court subsequently denied the government's motion for an order of forfeiture "in the sound exercise of its discretion." Id. at 1394. Except as to defendant/appellee Great Western, the government appeals the court's denial of its forfeiture motion.

While the only issue properly before the district court concerned forfeiture under §1467(a)(3), the district court

---

[23]     Section 1462 makes "knowingly us[ing] any express company or other common carrier, for carriage in interstate or foreign commerce--(a) any obscene ... motion picture film" punishable by a fine of up to $5,000 and/or imprisonment up to five years for a first offense.  18 U.S.C. §1462(a).

[24]     The government did not seek forfeiture as against Susan Colvin.

19

nonetheless chose to discuss forfeiture under §1467(a)(1) and (a)(2). See id. at 1382 - 85. The court's discussion of those other forfeiture provisions is both problematic and wholly unnecessary.[25] This court will entertain only the district court's construction of §1467(a)(3).

A critical flaw in the district court's construction of §1467(a)(3) concerns the clause in which the court is directed to take "into consideration the nature, scope, and proportionality of *the use of the property in the offense*" in exercising its discretion. 18 U.S.C. §1467(a)(3) (emphasis added). Under the district court's reading, the only property over which the district court has discretion to order forfeiture is property *actually* used in the offense. See Cal. Publishers, 778 F.Supp. at 1386 n.9. That is, according to the district court, any property that the jury found was merely "*intended* to be used to commit or promote the commission" of an offense under the chapter on obscenity would be automatically excluded from forfeiture. 18 U.S.C. §1467(a)(3) (emphasis added).

This construction renders the first part of §1467(a)(3) virtually meaningless. While a jury is empowered under the first part of §1467(a)(3) to return a broad forfeiture verdict as to

_____

[25] For instance, in its construction of §1467(a)(1), the district court noted that "an order of forfeiture of materials not found to be obscene would do violence to the First Amendment's protection from prior restraint." See Cal. Publishers, 778 F.Supp. at 1384. This conclusion erroneously predicted the Supreme Court, which recently rejected the very same argument in the context of RICO forfeiture. See Alexander v. United States, 113 S.Ct. 2766, 2770 - 71 (1993). The constitutional objections raised to §1467(a)(3) are discussed fully in part 2 infra.

20

property which it found to be actually used *or* intended to be used to commit *or* promote the commission of the obscenity offense, the district court's discretion to order forfeiture under the latter portion of the statutory provision would extend only to a much more narrow class -- property actually used in the offense.

Harmonizing all of its parts, as we must do, §1467(a)(3) plainly extends the court's discretion much more broadly than as construed by the district court. Consequently, in exercising its discretion, the district court <u>must</u> take into account the "nature, scope, and proportionality" of the use -- <u>both</u> actual and intended -- of the property in the commission <u>and</u> promotion of the obscenity offense.[26]

The district court also misconstrued §1467(a)(3) when it artificially narrowed the scope of forfeiture to include only property used to produce or transport obscene articles. <u>See Cal. Publishers</u>, 778 F. Supp at 1388-1389. No such qualifying language appears in the language of the statutory provision. Instead, the statute provides for the forfeiture of "<u>any</u> property, real or personal" so long as it is used or intended to be used to commit or to promote the commission of the obscenity offense. 18 U.S.C. §1467(a)(3). (emphasis added).

Rather than rely on the unambiguous language of the statute, the district court hinged its analysis on a piece of

---

[26] "Offense" for purposes of § 1467(a)(3) forfeiture is the offense of conviction. Specifically, the offense of conviction must be -- per the statutory requirement -- "an offense involving obscene material <u>under this chapter</u>." 18 U.S.C. § 1467(a) (emphasis added).

ambiguous legislative history.[27] See Cal. Publishers, 778 F.Supp at 1385, 1388. Except in rare circumstances, judicial inquiry is complete when the terms of a statute are unambiguous. See Demarest v. Manspeaker, 111 S.Ct. 599, 604 (1991). The meaning of "any property" is perfectly clear and does not present the exceptional case in which application of the statute as written would produce a result demonstrably at odds with the intentions of its drafters. See id. (relying on Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 571 (1982)).

The district court's erroneous construction of §1467(a)(3) led the court improperly to refuse consideration of certain evidence. Two particular instances merit discussion. First, the district court refused to consider FBI summaries of seventy-two unindicted videotapes shipped into the Dallas area by defendant/appellees. See Cal. Publishers, 778 F. Supp. at 1388.

---

[27] The specific legislative history relied upon by the district court is particularly suspect. The district court relied upon a portion of President Reagan's message to Congress urging adoption of the larger legislation of which §1467(a)(3) was a part. See Cal. Publishers, 778 F.Supp. at 1385. The district court quotes a section of the message in which the President noted that §1467(a)(3) "'is intended to cover the things used to produce or transport the obscene article.'" See id. (citations omitted). Note that the President's remarks were directed at a very different, earlier version of §1467(a)(3). See id. at 1385 n.8.

The court took these remarks to mean that §1467(a)(3) only allowed forfeiture of property used in the production or transportation of the obscene material. See id. at 1388. However, the quoted language could easily be read not to be exclusive in its coverage. As a general matter, legislative history in the form of Presidential messages or committee reports -- a legislative analogue to the Presidential message -- should be approached with skepticism. See, e.g., Wis. Pub. Intervenor v. Mortier, 111 S.Ct. 2476, 2487 - 2491 (1991) (Scalia, J., concurring) (criticizing use of committee reports in part because of their unreliability as indicators of congressional intent).

A magistrate in Los Angeles had concluded that probable cause existed to believe that these tapes were obscene. See id. The district court declared that "[t]o assume that the unindicted video tapes are obscene would be as improper as finding that all eight of the indicted video tapes are obscene, despite the fact that the jury did not so find." Id.

But the unindicted videos need not be deemed obscene in order for the court to consider them for purposes of forfeiture.[28] First, to the extent the unindicted videos are part of the "contents" of the real property that the jury found subject to forfeiture in its special verdict, the district court must take them into account in deciding whether to exercise its discretion. Second, in actually exercising its discretion to determine a forfeiture under § 1467(a)(3), the court might well conclude that these unindicted, sexually explicit videos shipped into Dallas were used to promote the commission of the offense of conviction -- namely, interstate shipping of the obscene videos. The court might reasonably view the numerous unindicted shipments into the Dallas area as facilitating the offense of conviction in that the shipments established or maintained market presence in Dallas. Further, the shipments might reasonably be seen as helping build the necessary client contacts or reputation in the Dallas market with the inevitable consequence of facilitating the conviction offense.

---

[28]     As to the constitutional propriety of such forfeiture, see note 29 infra.

23

Property used to promote the commission of the obscenity offense necessarily encompasses a broader category of property than that used to commit the offense. Following from this observation, the nexus required of property used to promote the commission of the obscenity offense is necessarily less exacting than that required of property used to commit the offense. The district court thus erred in refusing to consider this evidence and should do so on remand.

Similarly, the court is required on remand to consider the 369 videos in the defendants' inventory which had been found obscene in unrelated state prosecutions in Texas. The court refused to consider such evidence in exercising its discretion to order forfeiture on the grounds that they were "irrelevant" and that no evidence existed "that the [d]efendants ever shipped a single copy of any of the ... [videos]" into the Dallas Division of the Northern District of Texas. Id. at 1388 n.12. Under our above reasoning, however, they are equally subject to consideration by the court as were the unindicted videotapes.

By discussing the two sets of videos that the district court specifically refused to admit, we by no means intimate the extent of the district court's task on remand. The narrow construction of the statute by the district court permeated its view of the relevant considerations at the forfeiture stage. For example, under the district court's narrow view, a computer not actually used in the offense but located on the defendants' premises -- part of the contents of the real property the jury

24

found subject to forfeiture -- would not be subject to forfeiture for a couple of reasons. First, the district court construed §1467(a)(3) to be limited to articles used to produce or transport obscene articles; presumably the computer would not be covered under this construction. Second, the district court also construed its discretion to extend only to property actually used in the offense.

Under the proper understanding of the statute, however, this computer could be found subject to forfeiture in the court's discretion. The district court would have to consider the nature, scope, and proportionality of the computer's use -- actual and intended -- in the commission and promotion of the obscenity offenses. If the computer were solely dedicated to keeping sales and transport records of the sexually explicit inventory, a district court would be within its discretion to order forfeiture following these criteria. This result is completely permissible even though the computer was not actually used to commit the §1462 violation.

This illustration does not suggest that the issue of forfeiture must be fought item by item across a defendant's inventory. Rather, we hope to demonstrate that the proportionality determination embodies more property than a forfeiture of only the obscene materials themselves or the articles used in their transportation and production. Comparison with the drug crime and RICO forfeiture provisions is also apt. In the former case, Congress authorized forfeiture of property used "in any part" to

facilitate a drug offense, 21 U.S.C. §853 (1988); this penalty is broader than the § 1467(a)(3) discretionary provision. RICO forfeiture, authorized under 18 U.S.C. § 1963 (1988), is also broader, but it is predicated upon the more onerous conviction of predicate offenses establishing an illegal "enterprise". As we view it, § 1467(a)(3) discretionary forfeiture ought to rest in the middle ground between the district court's unduly narrow construction and the broader mandatory forfeitures authorized under other statutes.[29]

On remand, the district court must broaden its view of discretionary forfeiture consistent with this opinion. While attempting to guide the court's exercise of discretion, we do not intimate how discretion should ultimately be exercised.

### 2. Constitutional Objections

Defendant/appellees argue that any interpretation of §1467(a)(3) other than that of the district court would run afoul of the Constitution. Specifically, they urge that our view of the statutory provision constitutes an impermissible prior restraint on presumptively protected speech and will lead to a chilling effect on such speech. Warner also argues that the forfeiture sought by the government would violate the Eighth Amendment.

Their First Amendment concern was laid to rest by the Supreme Court's recent opinion in Alexander v. United States, ____ U.S. ___, 113 S.Ct. 2766 (1993). The Supreme Court turned back the

---

[29] It was appropriate for the court to assess forfeiture against the backdrop of the criminal sentences and five-figure fines it meted out for the convictions.

26

argument that a RICO forfeiture of sexually oriented business convicted of multiple obscenity violations constituted an impermissible prior restraint. To accept the defendant's argument, the Court noted, "would virtually obliterate the distinction ... between prior restraints and subsequent punishments." Id. at 2771. The critical distinction that placed the RICO forfeiture order firmly in the category of subsequent punishments was that the order did not forbid future expressive activities or require any sort of prior approval for such activities. See id. Section 1467 forfeiture shares this constitutionally significant characteristic. As to the alleged chilling effect on protected speech, Alexander countered that "the threat of forfeiture has no more of a chilling effect on free expression than the threat of a prison term or a large fine." See id. at 2774. The same holds true of a § 1467 forfeiture.[30]

Warner's Eighth Amendment objection is premature since we are remanding to the district court for a redetermination of the appropriateness of forfeiture. If the district court in the exercise of its discretion orders forfeiture, defendants may at such time raise their Eighth Amendment arguments. See Alexander, 113 S.Ct. at 2775 - 76 (concluding that on remand order of criminal

---

[30] The defendant/appellees also argue that any construction of the statute which allows for forfeiture of videotapes in their California inventory based on the videotapes found obscene in Dallas would effectively violate the community standards test set forth in Miller v. California, 413 U.S. 15, 32 - 34 (1973). But this argument assumes that the videos are being forfeited because they are believed to be obscene. Under §1467(a)(3), the videos may be forfeited because they were related to the defendants' obscenity convictions in this case and, thus, as subsequent punishment.

27

forfeiture under RICO should be analyzed under Excessive Fines Clause of Eighth Amendment).

## III.

## CONCLUSION

A thorough review of the many issues raised by this complex obscenity prosecution leads us to affirm the convictions of all defendants and remand to the district court for a new forfeiture proceeding consistent with the proper construction of §1467(a)(3).  **AFFIRMED** IN PART; **REMANDED** IN PART.