**The STATE of Texas, Appellant,**

v.

**Johawn Coya ROSS, Appellee.**

**No. 0982–96.**

Court of Criminal Appeals of Texas, En Banc.

Sept. 10, 1997.

William Karo Johnson, Dallas, for appellant.

Sue Korioth, Assistant District Attorney, Dallas, Matthew Paul, State's Atty., Austin, for State.

Before the court en banc.

*OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW*

MEYERS, Judge.

A jury found appellee guilty of involuntary manslaughter and assessed a sentence of sixteen years confinement. The State appealed, contending the sentence was illegal because the trial court did not enter a deadly weapon finding in the judgment. The Fifth Court of Appeals requested that both parties submit briefs so that it could determine whether its jurisdiction was invoked under Tex.Code Crim. Proc. Ann. art. 44.01(b), which allows the State an appeal "on the ground that the sentence is illegal." The State argued that the deadly weapon finding ought be considered part of the sentence under art. 44.01(b) and that the trial court's failure to include the finding in this case was a clerical error, thus rendering the sentence illegal. For his part, appellee focused on the legality of the sentence. Referencing those cases that set out when the trial court can properly enter a deadly weapon finding into the judgment, appellee argued that the trial court could not have entered such a finding in this case and thus did not err in not doing so. The sentence, by appellee's reckoning, was therefore not illegal such that jurisdiction was invoked under art. 44.01(b). The court of appeals, citing *Marshall v. State*, 860 S.W.2d 142, 143 (Tex.App.—Dallas 1993, no pet.), dismissed the appeal for want of jurisdiction. We granted discretionary review to determine whether the court of appeals erred in its determination.

■ We emphasize, at the outset, that the legality of the sentence in this case is not before us. The court of appeals did not address that issue and they were correct to not do so. As the plain language of art. 44.01(b) makes clear, jurisdiction under that statute does not hinge on the legality of a sentence. Instead, and as the court of appeals properly assessed, art. 44.01(b) jurisdiction turns on whether the State appeals a

*sentence.* After all, art. 44.01(b) only applies to sentences:

> The [S]tate is entitled to appeal *a sentence* in a case on the ground that the sentence is illegal.

TEX.CODE CRIM. PROC. ANN. art. 44.01(b)(emphasis added). Thus, once the court of appeals determines that the State is appealing a sentence and not something else [1], jurisdiction is properly invoked and questions of legality can be addressed on their merits. This, because art. 44.01(b) provides for the appeal of a sentence not *when* a sentence is illegal, but *on the ground* that it is illegal.

Addressing the jurisdictional question of whether the State was properly appealing a sentence, the court of appeals relied on *Marshall* for the proposition that a deadly weapon finding is not part of a sentence. *Marshall,* 860 S.W.2d at 143. The State argues that this reliance is misplaced since the court of appeals in *Marshall* determined the scope of a sentence not under art. 44.01(b), the provision at issue here, but instead under TEX.CODE CRIM. PROC. ANN. art. 42.03, which mandates that the sentence "shall be pronounced in the defendant's presence." The State urges that the term "sentence" in art. 44.01(b) should be influenced by the broad construction of TEX. CODE CRIM. PROC. ANN. art. 44.01(a).[2] Specifically, the State points out that this Court has construed art. 44.01(a)(1) broadly to allow a State's appeal when an order that does not explicitly "dismiss" an indictment nevertheless has the effect of a dismissal. *State v. Moreno,* 807 S.W.2d 327, 333 (Tex. Crim.App.1991). Extending *Moreno* to this case, the State suggests that, "whether or not the deadly weapon finding is technically a part of the sentence", an appeal should be allowed under art. 44.01(b) when the trial court's action affects the sentence. We, however, cannot dismiss the question of whether a deadly weapon finding is part of a sentence as a mere technicality. In fact, it seems quite central to the issue before us today since the plain language of art. 44.01(b) only allows the State to appeal sentences. *See Boykin v. State,* 818 S.W.2d 782 (Tex.Crim.App.1991).

■ By its plain language, TEX.CODE CRIM. PROC. ANN. art. 42.02 considers a "sentence" only "part of the judgment."[3] This has not always been the case. In fact, the sentence used to encompass the entire judgment in that the sentence was "the order of the court . . . pronouncing the judgment and ordering the same to execute." *Thornton v. State,* 576 S.W.2d 407, 408 (Tex.Crim.App.1979) *citing* TEX.CODE CRIM. PROC. art. 42.02 (as enacted by Acts 1965, 59th Leg., p. 317, ch. 722, § 1, eff. Jan. 1, 1966). But a subsequent amendment significantly narrowed the definition of "sentence" so that it now only includes "that part of the judgment order[ing] that the punishment be carried into execution in the manner prescribed by law." TEX.CODE CRIM. PROC. art. 42.02 (as amended by Acts 1981, 67th Leg., p. 809, ch. 291, § 112, eff. Sept. 1, 1981). The plain language thus indicates that a sentence is nothing more than the portion of the judgment setting out the terms of punishment. For example, the sentence in this case would include the *facts* that appellant is to serve sixteen years in the penitentiary beginning July 28, 1995, that his term is concurrent and that he must pay a $500 fine. It would not incorporate, as the State would have it, those aspects of the judgment merely *affecting* those facts. By the State's logic, the word "sentence" in art. 44.01(b) should be construed to embody anything affecting the "sentence." But almost everything in the judgment affects the "sentence", including the jury verdict, the offense for which defendant is convicted and affirmative findings. For example, if the defendant is found not guilty, he cannot be punished at all. Like-

---

1. *State v. Roberts,* 940 S.W.2d 655, 656–57 (Tex. Crim.App.1996) (each court has jurisdiction to determine whether it has jurisdiction).

2. TEX.CODE CRIM. PROC. ANN. art. 44.01(a) provides that:

   (a) The state is entitled to appeal an order of a court in a criminal case if the order:

   (1) dismisses an indictment, information, or complaint or nay portion of an indictment, information or complaint;

3. The question before us today is whether the sentence, as part of the judgment, incorporates affirmative findings, which are also part of the judgment. TEX.CODE CRIM. PROC. ANN. art. 42.01 § 1(21).

wise, the fact that he is convicted of shoplifting, as opposed to capital murder, also necessarily affects his sentence. Like the jury verdict and the offense for which a defendant is convicted, a deadly weapon finding also impacts the sentence. Yet, to consider any of these findings as part of the "sentence" disregards the fact that the legislature has narrowed, not broadened, the definition of "sentence".

*Moreno* does not compel a different conclusion. Under 44.01(a), the State may appeal certain actions of the trial court. Pursuant to *Moreno*, jurisdiction vests when these actions are effectively taken even if not identified by the name stated in the code. But, while "effective" action exists, there is no such thing as an "effective" sentence. After all, the legislature has explicitly defined a "sentence".[4] TEX.CODE CRIM. PROC. ANN. art. 42.02. In other words, although some things may impact a sentence, like a deadly weapon finding, they in no way become a "sentence" as defined by the legislature. As the Dallas Court of Appeals correctly pointed out in

*Marshall,* a deadly weapon finding always occurs before punishment is imposed and, while such a finding may *affect* a sentence, it does not effectively become a sentence or any part thereof. *Marshall,* 860 S.W.2d at 143. To further buttress its holding in *Marshall,* the Dallas Court of Appeals turned to TEX. CODE CRIM. PROC. ANN. art. 42.01, which sets out what should be included in a judgment, and noted that those portions "concerning any deadly weapon finding are listed separately from the portions regarding the sentence." *Id.*

■ That said, we recognize the concern in *Moreno* that trial judges "may have a tendency to resolve doubtful legal questions in favor of the defendant because such a ruling cannot harm the judge's reversal rate." *Moreno,* 807 S.W.2d at 329 n. 3. Of course, the State should be able to seek relief when a trial court fails to do something it is required to do. Fortunately, our law grants the State an avenue of relief by way of a nunc pro tunc order, which may be used to

---

4. Judge Womack's solution to dealing with the confines of the Legislature's definition is to disregard that definition and instead apply the common usage meaning of "sentence." This approach is contrary to precedent, the Code of Criminal Procedure and treads on notions of separation of powers. TEX CODE CRIM. PROC. ANN. art. 3.01 ("All words, phrases and terms used in this Code are to be taken and understood in their usual acceptation in common language, *except where specially defined.*")(emphasis added); *Vernon v. State,* 841 S.W.2d 407, 409 (Tex.Crim.App. 1992)("words not specifically defined by the Legislature" are to be understood in ordinary usage). We have explained the duty of this Court to refrain from intruding on the legislative realm:

> Courts have no power to legislate. It is the court's duty to observe, not to disregard statutory provisions. Courts can neither ignore nor emasculate the statutes. Further, courts have no power to create an exception to a statute, nor do they have power to add to or take from legislative pains, penalties and remedies.... It is for the Legislature, not the courts, to remedy defects or supply deficiencies in the laws, and to give relief from unjust and unwise legislation.

In *Dodd v. State,* supra, 201 S.W. at p. 1018, this Court wrote:

> "The duty of the courts is to observe statutory provisions. It does not lie with them to arbitrarily disobey them. The rights of the public and the citizen are best protected by an observ-

ance of the law as it is written where it does not overstep constitutional provisions...."

*Ex parte Hayward,* 711 S.W.2d 652, 655–56 (Tex. Crim.App.1986) (citations omitted).

Judge Womack reasons that because the terms "sentence" and "sentencing" as used in various places in the Code do not, in his view, appear to be consistent with how the term "sentence" is defined in article 42.02, then we should give the term its common meaning when construing it in the context of article 44.01. Never mind that application of the Legislature's definition *to article 44.01* does not render that provision absurd or ambiguous. *Boykin v. State,* 818 S.W.2d 782, 785–86 (Tex.Crim.App.1991)("If the plain language of a statute would lead to absurd results, or if the language is not plain but rather ambiguous, then *and only then,* out of absolute necessity, is it constitutionally permissible for a court to consider, in arriving at a sensible interpretation, such *extra* textual factors as executive or administrative interpretations of the statute or legislative history"); *see also Schultz v. State,* 923 S.W.2d 1, 2 (Tex.Crim.App.1996)("It is only when a statute is ambiguous or would lead to absurd results that a court may resort to extratextual factors such as legislative history"). If this Court is no longer bound when interpreting terms in the Code of Criminal Procedure, to apply the definitions of those terms that are provided in the Code of Criminal Procedure, then the respective roles of lawmaker and law interpreter are blurred beyond recognition.

correct clerical errors.[5] Tex.R.App. P. 36(a); *Ex parte Poe,* 751 S.W.2d at 876. If the trial court denies the State's motion for a nunc pro tunc order, the State can file a writ of mandamus in order to compel the trial judge to enter the affirmative finding into the judgment.[6] *Perkins v. Court of Appeals,* 738 S.W.2d 276, 284 (Tex.Crim.App.1987). But the State cannot appeal a case under Tex. Crim. Proc. Ann. art. 44.01(b) in order to rectify the absence of an affirmative finding in the judgment and we cannot rewrite art. 44.01(b) in order to allow the State to appeal a problem in the "judgment" rather than the "sentence".

■ The court of appeals' reliance on its opinion in *Marshall* was correct. We hold for art. 44.01(b), as the *Marshall* Court already has for art. 42.03, that a deadly weapon finding is not part of a sentence. To hold otherwise defies the plain text of art. 42.02, which defines a "sentence".

The court of appeals therefore did not err in dismissing this appeal for want of jurisdiction and we will not reinstate this appeal in that court.

KELLER, Judge, concurs with note:

I join the judgment of the Court, but I am not as sure as the majority that relief would be forthcoming *via* mandamus on the facts of this case. It is true that when there is a

jury-made affirmative finding, the entry thereof into the judgment is not optional with the trial court. There is a question here, however, about whether there *is* a jury-made affirmative finding. The jury found appellee guilty as included in the indictment rather than as alleged in the indictment. This type of verdict allows the trial court to enter an affirmative finding, but whether a court is required to do is an issue never settled by this Court, as far as I can tell.

And finally, it should go without saying (but apparently doesn't) that if the State wants an affirmative finding in the judgment, the State should submit the question to the jury in a special issue.

MANSFIELD and PRICE, JJ., join this note.

WOMACK, Judge, dissenting on state's petition for discretionary review.

The question is what the legislature meant when it gave the State the right "to appeal a sentence in a case on the ground that the sentence is illegal." Code of Criminal Procedure Article 44.01(b). More particularly, does the statute allow the State to appeal the trial court's failure to make an affirmative finding on the defendant's use of a deadly weapon? The Court holds that the State

---

5. It is questionable in this case whether there was a jury-made affirmative finding. When there is a jury-made affirmative finding, its entry into the judgment is not optional upon the trial court:

> On an affirmative finding under this subdivision, the trial court *shall* enter the finding in the judgment of the court.

Tex.Code Crim. Proc. Ann. art. 42.12, § 3(g)(2) (emphasis added). The failure of a trial court to do something that is mandatory has been deemed a clerical error as opposed to an error of judicial reasoning. *Ex parte Poe,* 751 S.W.2d 873, 876 (Tex.Crim.App.1988). Judge Womack voices his disagreement with this statement, "that a court has authority to correct an error *nunc pro tunc* if the error was the violation of a mandatory duty" and says he believes *"nunc pro tunc* corrections should be limited to clerical errors." But he doesn't say that *Poe* should be overruled or show how its reasoning is faulty in equating the violation of a mandatory duty with a clerical error. In *Poe* this Court explicitly held that when a court has no discretion on a matter

(when it is, in other words, a mandatory duty), then the failure of the court to comply *is* considered a clerical error since no judicial reasoning is required:

> As previously stated, Article 42.12, § 3f(a)(2), clearly mandates that the trial judge enter in the judgment a finding that a deadly weapon was used or exhibited during the commission of an offense, once the trier of fact makes a proper affirmative finding as per *Polk.* In the present case, the trier of fact undoubtedly made such an affirmative finding. Once this determination had been made the trial judge was required to reflect this by making a proper entry in the judgment. *The trial judge retained no discretion to do otherwise. Consequently, the failure of the trial judge to do so was not an error of judicial reasoning but rather an error of a clerical nature.*

*Id.*

6. Under Judge Womack's construction, the State's "adequate remedy at law" would be an appeal, thereby foreclosing mandamus relief.

may not appeal because such an affirmative finding is not part of the sentence.

Statutory language should be construed according to common usage, and according to technical meanings.[1] "Sentence" has a common meaning and technical or particular meanings. Its common meaning is "punishment."[2] One of its technical or particular meanings comes from Article 42.02, which defines "sentence" as a part of a judgment. The Court holds that this technical meaning from Article 42.02 should be used in construing Article 44.01(b). I believe that the common meaning of "sentence" should be used.

It is a mistake to think that the technical meaning of "sentence" in Article 42.02 is always appropriate to other statutes. In the Code of Criminal Procedure "sentence" sometimes has the common meaning, and sometimes a technical meaning.

For example, Code of Criminal Procedure Article 37.071, § 2(a) says that in the trial of a capital felony case there shall be "a separate sentencing proceeding" in which evidence may be presented as to any matter that the court deems relevant to "sentence." There "sentence" cannot mean a part of the judgment; it means "punishment." *Livingston v. State*, 542 S.W.2d 655, 661 n. 4 (Tex.Cr.App.1976), *cert. denied*, 431 U.S. 933, 97 S.Ct. 2642, 53 L.Ed.2d 250 (1977). Identical language appears in Article 37.0711, § 3(a). Similar usage appears in Article 37.07, § 3(a), which says that in a non-capital case evidence may be offered as to any matter the court deems relevant to "sentencing."

When error affects only the punishment stage of a capital trial, the "sentence" may be reformed. Code of Criminal Procedure Article 44.251. Or a new "sentencing" stage may be held before a new jury if the "sentence" is set aside or invalidated in a capital case in which a defendant was "sentenced to death." Code of Criminal Procedure Article 44.29(c). In a non-capital case, error at the punishment stage produces a new "sentencing stage." Code of Criminal Procedure Article 44.29(b). In these statutes, which are in the same chapter as the article we are construing, "sentence" means "punishment," not a part of the judgment.

"Before pronouncing sentence" in a misdemeanor case the "judge may consider alternative sentencing" by remanding the defendant to a treatment facility. Code of Criminal Procedure Article 42.023. This is not a reference to the part of the judgment which is technically defined in Article 42.02.

These statutes demonstrate that the term "sentence" in the Code of Criminal Procedure cannot always be construed according to the technical definition in Article 42.02. It sometimes must be given its meaning in common usage: punishment, in the broad sense.

After considering the common usage and technical meaning of a term in a statute, we may construe a statute according to the object sought to be attained. Code Construction Act, Texas Government Code § 311.023(1).

This Court has thoroughly considered the object of Article 44.01 in *State v. Moreno*, 807 S.W.2d 327 (Tex.Cr.App.1991). There the Court construed Section (a)(1) of Article 44.01, which says the State may appeal an order that "dismisses" an indictment, information, or complaint. This term required construction because Texas courts have no general authority to dismiss charging instruments. *See State v. Johnson*, 821 S.W.2d 609 (Tex.Cr.App.1991). While it would have been more appropriate for the statute to have spoken in terms of "setting aside" a charging instrument, which is the nomenclature of our Code of Criminal Procedure, this Court recognized that Article 44.01 borrowed liberally from its federal counterparts, 18 U.S.C. § 3731 and Federal Rule of Criminal Procedure 12(a), which use the term "dismiss." *State v. Moreno*, 807 S.W.2d at 329 n.

---

1. Code Construction Act, Tex. Gov't Code § 311.011:

    (a) Words and phrases shall be read in context and construed according to the rules of grammar and common usage.

    (b) Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly.

2. "Sentence" is defined as "the punishment awarded by a law court to a person convicted in a criminal trial...." *Oxford American Dictionary* (1980).

2. We recognized that Article 44.01 was "intended to extend to the State appellate powers akin to those that the United States Congress had extended to the federal government in a criminal case," *id.* at 329, which included the power to appeal whenever the Constitution would permit. *Id.* at 332. After examining the federal practice, we held that Section (a)(1) authorized the State to appeal from any trial court order concerning an indictment or information whenever the order effectively terminates the prosecution in favor of the defendant, even though the order was not technically a "dismissal." *Ibid.*

Remembering that, as we held in *Moreno*, Article 44.01 was intended to give the State full powers to appeal whenever the Constitution would permit, and that federal law is a guide to the construction of Article 44.01, we must consider the interpretations of the Constitution and the corresponding federal statutes.

In 1980 the Supreme Court of the United States took up the issue of whether authorizing the Government to appeal a sentence violated the Double Jeopardy Clause of the Fifth Amendment of the Constitution. *United States v. DiFrancesco*, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980). The right to appellate review of sentences for certain offenses had been enacted in two identical statutes.[3] The Court recognized that "[a]cademic and professional commentary on the general issue is divided." *Id.* at 121 n. 4, 101 S.Ct. at 429 n. 4. The Court identified five propositions pertinent to the question whether appellate review of a sentence would violate the constitutional prohibition against multiple trials:

A. The Double Jeopardy Clause is *not* a complete barrier to an appeal by the prosecution in a criminal case. "(W)here a Government appeal presents no threat of successive prosecutions, the Double Jeopardy Clause is not offended." *United States v. Martin Linen Supply Co.*, 430 U.S. [564], at 569–570 [97 S.Ct. 1349, 1354, 51 L.Ed.2d 642] (1977).... From this it

follows that the Government's taking a review of respondent's sentence does not in itself offend double jeopardy principles just because its success might deprive respondent of the benefit of a more lenient sentence....

B. The double jeopardy focus, thus, is not on the appeal but on the relief that is requested, and our task is to determine whether a criminal sentence, once pronounced, is to be accorded constitutional finality and conclusiveness similar to that which attaches to a jury's verdict of acquittal. We conclude that neither the history of sentencing practices, nor the pertinent rulings of this Court, nor even considerations of double jeopardy policy support such an equation....

C. This Court's decisions in the sentencing area clearly establish that a sentence does not have the qualities of constitutional finality that attend an acquittal....

D. The double jeopardy considerations that bar reprosecution after an acquittal do not prohibit review of a sentence....

E. The Double Jeopardy Clause does not provide the defendant with the right to know at any specific moment in time what the exact limit of his punishment will turn out to be....

*Id.* at 132–37, 101 S.Ct. at 434–37.

"All this highlights the distinction between acquittals and sentences....[T]he Double Jeopardy Clause does not require that a sentence be given a degree of finality that prevents its later increase." *Id.* at 137, 101 S.Ct. at 438. The Court held that the Government's appeal of a sentence did not violate the constitutional prohibition of multiple trials.

The Court also held that the increase of a sentence on appellate review did not constitute multiple punishment. *Id.* at 138–40, 101 S.Ct. at 438–39. Therefore none of the protections of the Double Jeopardy Clause were denied by the Government's appeal of a sentence.

**3.** Organized Crime Control Act of 1970, Act of Oct. 15, 1970, P.L. 91–452, Title X, § 1001(a), 84 Stat. 922, 950 (repealed 1984); Comprehensive

Drug Abuse Prevention and Control Act of 1970, Act of October 27, 1970, P.L. 91–513, Title II, § 409(h), 84 Stat. 1236, 1269 (repealed 1984).

With the constitutional issue settled Congress passed the Sentencing Reform Act of 1983,[4] which gave the Government in every criminal case a right to appeal a "sentence" that "was imposed in violation of law." 18 U.S.C. § 3742(b)(1). This statute authorizes the Government to appeal the trial court's failure to apply mandatory punishment statutes. *See, e.g., United States v. Investment Enterprises, Inc.*, 10 F.3d 263, 270 (5th Cir. 1993) (denial of motion for *in personam* forfeiture); *United States v. Anderson*, 921 F.2d 335 (1st Cir.1990) (failure to apply Armed Career Criminal Act).

In light of our previous holding in *Moreno*, the constitutional doctrine of *DiFrancesco*, and the similarity of our statute to the corresponding federal statute, I believe that "sentence" in Article 44.01(b) means punishment in the broadest sense. The statute should be construed to permit the State to appeal illegal punishments as distinguished from acquittals. This would give it the full power, as permitted by the Constitution, to appeal a sentence. I would also hold that the trial court's entry, or failure to make an entry, of an affirmative finding that the defendant used or exhibited a deadly weapon is a part of the punishment which may be appealed by the State without violating the Double Jeopardy Clause.

By construing "sentence" according to one technical meaning, the Court authorizes the State to appeal only a defect in a particular part of a judgment. It distinguishes a sentence from other parts of a judgment, rather than from an acquittal. This does not accomplish the legislative objective that we recognized in *Moreno*.

Not only does this construction prevent full appellate review of punishment issues when a sentence of confinement is imposed, it also will make it impossible for the State to appeal most judgments granting community supervision because there is no Article 44.02 "sentence" in most of such cases. (Only in a "shock probation" judgment is there a sentence, the execution of which is suspended.) This cannot have been what the statute was intended to do.

Article 44.01(b) should be construed to give the State the power to appeal illegal punishments.

I also want to record my respectful disagreement with the Court's statement, *ante* at n. 4, that a court has authority to correct an error *nunc pro tunc* if the error was the violation of a mandatory duty. I believe that *nunc pro tunc* corrections should be limited to clerical errors.

McCORMICK, J., joins.

---

4. Act of Oct. 12, 1984, P.L. 98–473, Title II, ch.    II, 98 Stat. 1837, 1987.