PD-1368-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 10/20/2015 11:20:26 AM
Accepted 10/21/2015 2:28:06 PM
ABEL ACOSTA
CLERK

No. 07-14-00333-CR

## TO THE COURT OF CRIMINAL APPEALS

## OF THE STATE OF TEXAS

THE STATE OF TEXAS,        Appellant

v.

SAMMY CARL WILLIAMS,        Appellee

Appeal from Lynn County

\*   \*   \*   \*   \*

## STATE'S PETITION FOR DISCRETIONARY REVIEW

\*   \*   \*   \*   \*

MICHAEL MUNK
District Attorney
SBN 24052943

JASON BUJNOSEK
Assistant District Attorney
SBN 24036285

P.O. Box 1124
Lamesa, TX 79331
806-872-2259
806-872-3174 fax
michael.munk@co.dawson.tx.us
jason.bujnosek@co.dawson.tx.us

FILED IN
COURT OF CRIMINAL APPEALS

October 21, 2015

ABEL ACOSTA, CLERK

## IDENTITY OF PARTIES, JUDGE, AND COUNSEL

- The parties to the trial court's judgment are the State of Texas and Appellant, Sammy Carl Williams.

- The trial Judge was Hon. Carter T. Schildknecht of the 106th Judicial District.

- Trial counsel for the State were Michael Munk, District Attorney, and Jason Bujnosek, Assistant District Attorney, P.O. Box 1124, Lamesa, Texas, 79331.

- Counsel for the State before the Seventh Court of Appeals were Michael Munk, District Attorney, and Jason Bujnosek, Assistant District Attorney, P.O. Box 1124, Lamesa, Texas, 79331.

- Counsel for the State before the Court of Criminal Appeals are Michael Munk, District Attorney, and Jason Bujnosek, Assistant District Attorney, P.O. Box 1124, Lamesa, Texas, 79331.

- Counsel for Appellant at trial was Mark Snodgrass, 1011 13th Street, Lubbock, Texas, 79401.

- Counsel for Appellant before the Seventh Court of Appeals was Allison Clayton, P.O. Box 64752, Lubbock, Texas, 79464.

# TABLE OF CONTENTS

INDEX OF AUTHORITIES.................................................................................iv

STATEMENT REGARDING ORAL ARGUMENT ............................................ 1

STATEMENT OF THE CASE.............................................................................. 2

STATEMENT OF PROCEDURAL HISTORY...................................................... 3

GROUNDS FOR REVIEW ................................................................................. 3

    **1. Where a jury has made a mistake in its punishment verdict on the form of verdict and given notice to the court that they had misunderstood the form, and the jury has not departed, separated, or communicated with anyone else, is the sentence imposed by the court an "illegal sentence" if the court does not then permit the jury to correct the form of verdict?**

    **2. Where a jury has made a mistake in writing its punishment verdict on the form of verdict and given notice to the court that they had misunderstood the form, and the court does not permit the jury to reform or correct its verdict, is a judgment based upon the erroneously-accepted verdict a "modified judgment"?**

ARGUMENT ....................................................................................................... 4

PRAYER FOR RELIEF ...................................................................................... 8

CERTIFICATE OF SERVICE ............................................................................ 9

CERTIFICATE OF COMPLIANCE................................................................... 10

APPENDIX A (transcript excerpt, *State v. Sammy Carl Williams*, cause 14-3151, 106th District Court in Lynn County, August 20,2014)

APPENDIX B (opinion of the Court of Appeals)

APPENDIX C  (*State v. Baize,* 981 S.W.2d 204 (Tex. Crim. App. 1998))

## INDEX OF AUTHORITIES

CONSTITUTION

    TEX. CONST. art. V, § 13 .................................................................. 6


STATUTES

    TEX. CODE CRIM. PROC. art. 2.03(b) .................................................. 7

    TEX. CODE CRIM. PROC. art. 36.29(a) ................................................. 7

    TEX. CODE CRIM. PROC. ch. 37 .......................................................... 7

    TEX. CODE CRIM. PROC. art. 42.12 §4(a) ........................................... 2n

    TEX. CODE CRIM. PROC. art. 42.12 §6(a) ........................................... 2n

    TEX. CODE CRIM. PROC. art. 42.12 §10(a) ......................................... 2n

    TEX. CODE CRIM. PROC. art. 44.01 .................................................. 5-6

    TEX. R. APP. P. 66.3(f) ....................................................................... 7


CASES

    *Cook v. State*, 390 S.W.3d 363 (Tex. Crim. App. 2013) ................................... 4

    *State v. Baize,* 981 S.W.2d 204 (Tex. Crim. App. 1998) .................................. 6

    *State v. Dudley*, 223 S.W.3d 717 (Tex. App.—Tyler 2007, no pet.) ............... 4

    *State v. Ross,* 953 S.W.2d 748 (Tex. Crim. App. 1997) .................................. 6

    *State v. Williams*, ___ S.W.3d ___, No. 07-14-00333-CR,
        2015 Tex. App. LEXIS 9866 (Tex. App.—Amarillo 2015) ................... 3

    *Webber v. State*, 652 S.W.2d 781 (Tex. Crim. App. 1983) .............................. 4

    *West v. State*, 340 S.W.2d 813 (Tex. Crim. App. 1960) .................................. 4

    *Williams v. State*, 42 S.W.2d 441 (Tex. Crim. App. 1931) .............................. 4

No. 07-14-00333-CR

TO THE COURT OF CRIMINAL APPEALS

OF THE STATE OF TEXAS

THE STATE OF TEXAS,                                              Appellant

v.

SAMMY CARL WILLIAMS,                                        Appellee

\* \* \* \* \*

STATE'S PETITION FOR DISCRETIONARY REVIEW

\* \* \* \* \*

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

The State respectfully urges this Court to grant discretionary review.

**STATEMENT REGARDING ORAL ARGUMENT**

The State requests oral argument. The Court of Appeals, in arriving at its decision, erroneously determined that the State was not appealing a sentence but the procedure used to arrive at a sentence. The Court failed to note, however, that the case concerns jury unanimity, a constitutional matter, which makes the Court's analysis incorrect.

1

## STATEMENT OF THE CASE

On August 19, 2014, a jury convicted Appellee of five felony offenses: two counts of Aggravated Assault against two different victims, two counts of Failure to Stop and Render Aid, and one count of Intoxication Assault. Four of the five convictions included deadly weapon findings. Following a hearing on punishment, the jury indicated that they had arrived at a punishment verdict on August 20, 2014. The verdict forms returned by the jury imposed a sentence of 10 years in prison and recommended probation. No juror dissented during the initial reading of the verdict, and both sides waived a jury poll. All jurors remained in the jury box, within the presence of the court, for the remainder of the sentencing. During the pronouncing of the sentence, the State requested a jury poll due to agitation among the jurors, which the judge denied. The foreman of the jury then notified the court through the bailiff that, although the written verdict form recommended probation, the jury had intended for Appellee to go to prison for 10 years before he would be placed on probation[1]. The State requested that the jurors be returned to deliberations or, in the alternative, asked for a mistrial on punishment. The judge denied the State's requests and continued to sentence Appellant in accordance with the written forms of verdict, despite having actual notice from the still-present jury that the written forms did not conform to their intentions.

---

[1] A sentence of ten years imprisonment followed by probation is not a legal sentence. See TEX. CODE CRIM. PROC. art. 42.12 §§ 4(a), 6(a), 10(a).

The State appealed, citing an illegal sentence and a modified or arrested judgment as a basis for the appeal. The Seventh Court of Appeals dismissed the State's appeal for want of jurisdiction.

## STATEMENT OF PROCEDURAL HISTORY

In a published decision, the Seventh Court of Appeals dismissed the State's appeal for want of jurisdiction. *State v. Williams*, _____ S.W.3d _____, No. 07-14-00333-CR, 2015 Tex. App. LEXIS 9866 (Tex. App.—Amarillo 2015). The State did not file a motion for rehearing.

## GROUNDS FOR REVIEW

1. **Where a jury has made a mistake in its punishment verdict on the form of verdict and given notice to the court that they had misunderstood the form, and the jury has not departed, separated, or communicated with anyone else, is the sentence imposed by the court an "illegal sentence" if the court does not then permit the jury to correct the form of verdict?**

2. **Where a jury has made a mistake in writing its punishment verdict on the form of verdict and given notice to the court that they had misunderstood the form, and the court does not permit the jury to reform or correct its verdict, is a judgment based upon the erroneously-accepted verdict a "modified judgment"?**

3

## ARGUMENT

The present case represents a case of first impression. Historically, errors in the verdict returned by a jury have been dealt with in one of two ways: first, if the jury has dispersed and no longer has an identity as a unified body, the jury may not be reconvened to correct its verdict. *Cook v. State*, 390 S.W.3d 363 (Tex. Crim. App. 2013); *State v. Dudley*, 223 S.W.3d 717 (Tex. App.—Tyler 2007, no pet.). Second, if the jurors have not separated or have separated only momentarily, are still in the presence of the court, and it appears that no one has talked to the jurors about the case, the trial court may recall the jurors to correct their verdict. *Webber v. State*, 652 S.W.2d 781 (Tex. Crim. App. 1983); *West v. State*, 340 S.W.2d 813 (Tex. Crim. App. 1960).

The judge in the present case, however, took a previously unknown third option: ignoring the jury's communication about their intentions and pressing on with sentencing anyway. In doing so, the judge has left in question whether Appellee's sentence is authorized. Appellee's sentence cannot be the sentence intended by the jury, because that would be an illegal sentence (imprisonment followed by probation), and it also cannot be the sentence imposed by the judge, because the judge knew, before the jury left her presence, that the verdict forms did not reflect their agreement, and a judge may not substitute her judgment for the verdict of the jury. *Williams v. State*, 42 S.W.2d 441 (Tex. Crim. App. 1931). The

4

judge in the present case twice received information on the record that the jurors were seeking to impose an illegal sentence, first by a note from an alternate juror before deliberations were complete (CR 170, 6 RR 126), then by direct communication from the foreman through the bailiff (6 RR 135), and the judge failed to act on either occasion.

In either case, we are left with an illegal sentence. The sentence the jury sought to impose, imprisonment followed by probation, is not permissible under the law. The sentence imposed by the judge, however, was not the unanimous assent of the jury. At the guilt-innocence phase, the jurors had entered affirmative deadly weapon findings for four of the five charged counts[2], meaning that the judge had no authority to place Appellee on community supervision without the recommendation of the jury. It is clear from the record that the jury wanted Appellee to be imprisoned for ten years before being placed on probation; therefore, the judge's immediately placing Appellee on probation was not authorized. The situation is no different than if the jury had returned a verdict of 99 years imprisonment and the judge unilaterally sentenced the defendant to 5 years imprisonment. If there is no permissible avenue for the State to appeal this issue, then there is no oversight of judicial conduct at the closing phase of trial and, so long as a judge's decisions favor defendants over the State, TEX. CODE CRIM.

---

[2] C.R. 197, 199, 201, 204.

5

PROC. art. 44.01 stands as a shield that allows judges to alter jury verdicts with impunity.

The decision of the Court of Appeals rests entirely upon *State v. Baize,* 981 S.W.2d 204 (Tex. Crim. App. 1998), and *State v. Ross,* 953 S.W.2d 748 (Tex. Crim. App. 1997), which held that an appellate court could "look behind" the State's assertion that it was appealing an illegal sentence in order to determine whether it was in fact appealing something else. The Court of Appeals claims to have "looked behind" the State's appellate issues and determined that the State was not appealing a sentence, but the procedure leading to the imposition of the sentence, and thus did not invoke the Court's jurisdiction. The State contends that the Court of Appeals misapplied *Baize* and *Ross* in that it failed to consider the constitutional concerns of the State's appeal. The judge in the present case sentenced the defendant in accordance with a jury verdict that was not unanimous. Jury unanimity is a fundamental principle of our system of justice, and even *Baize* and *Ross* must bow to constitutional concerns. The Court of Appeals failed to consider that *Baize* begins from the proposition that, when the State was given the right to appeal in 1987, "'illegal sentence' had acquired a technical or particular meaning – a sentence the trial court had no jurisdiction to levy or one which violates a fundamental constitutional right." *Baize* at 205-6. The present case involves one such fundamental constitutional right: the right to a unanimous jury

6

verdict. The Court of Appeals thus erred in holding that it had no jurisdiction to consider the State's appeal.

The judge's actions in the present case violate the Texas Code of Criminal Procedure (article 36.29(a), twelve jurors required to render and return a verdict; article 2.03(b), trial court has a duty to ensure a fair trial for both the State and the defendant; and chapter 37, a verdict is the written decision of the jury) and the Constitution of the State of Texas (art. V § 13, verdict must be rendered by the whole of the jury). No juror voted for the sentence imposed by the judge. The jury reached out to the judge for help in correcting their sentencing mistake, and the judge chose to ignore them, despite the judge saying on the record, "I don't know what to do at this point, to be truthful." 6 RR 136. This clearly represents such a departure from usual judicial proceedings that, pursuant to TEX. R. APP. P. 66.3(f), this honorable Court must exercise its supervisory authority and intervene.

## PRAYER FOR RELIEF

Wherefore, the State of Texas prays that the Court of Criminal Appeals grant this Petition for Discretionary Review and declare a mistrial on punishment because no proper verdict was received or judgment issued by the trial court, and return the case to the trial court for a new trial on punishment.

Respectfully submitted,

Michael Munk
District Attorney
106th Judicial District
michael.munk@co.dawson.tx.us
Bar No. 24052943


Jason Bujnosek
Assistant District Attorney
106th Judicial District
P.O. Box 1124
Lamesa, Texas  79331
(806) 872-2259
(806) 872-3174 fax
jason.bujnosek@co.dawson.tx.us
Bar No. 24036285

8

**CERTIFICATE OF SERVICE**

I, Jason Bujnosek, Assistant District Attorney for the 106th Judicial District, hereby certify that a true copy of the above and foregoing State's Appeal Brief was transmitted by email to Allison Clayton, Attorney for Defendant, on this the 20th day of October, 2015.

Jason Bujnosek
ATTORNEY FOR STATE

## CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirements of TEX. R. APP. P. 9.4(e). It has been prepared on a computer using a conventional typeface (Times New Roman) in 14-point size. This document also complies with the word count provisions of Tex. R. App. Proc. 9.4(i) because it contains 1,483 words, as counted by the program used to create the document, excluding any parts exempted by TEX. R. APP. P. 9.4(i)(1).

_____
Jason Bujnosek
ATTORNEY FOR STATE

# APPENDIX A

TRIAL COURT CAUSE NO. 14-3151

| THE STATE OF TEXAS | ) IN THE DISTRICT COURT |
| | ) |
| vs. | ) LYNN COUNTY, TEXAS |
| | ) |
| SAMMY CARL WILLIAMS | ) 106TH JUDICIAL DISTRICT |

_____

**TRIAL ON THE MERITS – PUNISHMENT PHASE**
_____

On the 20th day of August, 2014, the following proceedings came on to be held in the above-titled and numbered cause before the Honorable Carter T. Schildknecht, Judge Presiding, held in Tahoka, Lynn County, Texas.

Proceedings reported by computerized stenotype machine.

**APPEARANCES**

Michael S. Munk
SBOT NO. 24052943
Jason Bujnosek
SBOT NO. 24036285
District Attorney's Office
P.O. Box 1124
Lamesa, Texas 79331
Telephone:  806-872-2259
Fax: 806-872-3174
Attorneys for the State

Mark S. Snodgrass
SBOT NO. 00795085
Taly Shae Jacobs
SBOT NO. 24074476
Mark Snodgrass Law Office
1011 13th Street
Lubbock, TX  79401
Telephone: 806-762-0267
Fax: 806-762-0277
Attorneys for the Defense

VOLUME 6

Trial on Merits – Punishment Phase

August 20, 2014

|                              | Direct | Cross | V.Dire |
|------------------------------|--------|-------|--------|
| **Calvin Boyd**              |        |       | PAGE VOL. |
| By Mr. Bujnosek              | 7 v6   |       |        |
| By Mr. Snodgrass             |        | 12 v6 |        |
| By Mr. Bujnosek              | 15 v6  |       |        |
| **Gloria Hernandez**         |        |       |        |
| By Mr. Munk                  | 18 v6  |       |        |
| **Nicolas Mata Jr.**         |        |       |        |
| By Mr. Munk                  | 31 v6  |       |        |
| State rests .................................33  6 |  |  |  |
| **Michelle Williams**        |        |       |        |
| By Mr. Snodgrass             | 34 v6  |       |        |
| By Mr. Bujnosek              |        | 38 v6 |        |
| By Mr. Snodgrass             | 42 v6  |       |        |
| By Mr. Bujnosek              |        | 45 v6 |        |
| **Barry Pittman**            |        |       |        |
| By Mr. Snodgrass             | 46 v6  |       |        |
| By Mr. Munk                  |        | 50 v6 |        |
| By Mr. Snodgrass             | 55 v6  |       |        |
| By Mr. Munk                  |        | 55 v6 |        |
| **Bill Schoemann**           |        |       |        |
| By Mr. Snodgrass             | 57 v6  |       |        |
| By Mr. Munk                  |        | 68 v6 |        |
| By Mr. Snodgrass             | 74 v6  |       |        |
| By Mr. Munk                  |        | 75 v6 |        |
| By Mr. Snodgrass             | 76 v6  |       |        |
| **Kevin Larpenter**          |        |       |        |
| By Mr. Snodgrass             | 77 v6  |       |        |
| By Mr. Munk                  |        | 83 v6 |        |
| By Mr. Snodgrass             | 86 v6  |       |        |
| By Mr. Munk                  |        | 87 v6 |        |
| By Mr. Snodgrass             | 89 v6  |       |        |
| Defendant rests ................................89  6 |  |  |  |
| Closing Argument by Mr. Munk ...................106  6 |  |  |  |
| Closing Argument by Mr. Snodgrass ..............112  6 |  |  |  |

Rebuttal Argument by Mr. Bujnosek ...............118    6

Motion for new trial ...........................137    6

Motion for new trial and mistrial ..............144    6

Reporter's Certificate .........................148    6

(Open court; parties present, jury not present.)

THE COURT: We have a question from the jury, and I don't know if I can answer it or not. In fact, there's several questions here. One of them says, "Retribution money just comes out of commissary? Or can defendant's business pay for retribution?"

MR. MUNK: "Retribution"?

THE COURT: They're talking about restitution. Question mark.

MR. SNODGRASS: I don't think you can answer it.

THE COURT: I think my answer has to be "I'm sorry. I cannot answer the question."

And the next question is "Do the fees get paid before the retribution?" I'll have to put my answer down here at the bottom to both of those.

They've got a -- we have, apparently, a foreman that's writing on the jury form. This is the question, and so she wrote it on here. "Should this say not less than one year?"

No. It should say "not more than one year, correct, just like it's written."

MR. SNODGRASS: Yes.

MR. MUNK: Yes. I think that's correct,

just like it's written.

THE COURT: The way it's written.

MR. SNODGRASS: Yes.

MR. MUNK: Yeah. I think what she doesn't notice is there's an "or" between the two sentences. She doesn't recognize --

THE COURT: Well, she should.

MR. MUNK: Yeah. She thinks it's one sentence.

THE COURT: She's marked through it. I'm going to write on here, "Please read the jury charge as it is written originally and continue deliberating."

Is that okay to say that much?

MR. SNODGRASS: I think that's fine.

MR. MUNK: Would you read it to me one more time.

THE COURT: I said, "Please read the jury charge as it is written originally and continue deliberating."

MR. MUNK: Yeah, that's fine.

(Recess taken.)

(Open court; parties present, jury not present.)

THE COURT: Okay.

Then, go on the record. I received a

note at 2:48 p.m. Apparently, from questioning the bailiff, it came from one of the alternate jurors, not from the foreman. It says, "I don't think they understand if they say ten years and recommend probation, that is not ten years plus probation."

After discussing it with the attorneys, our thought was that the bailiff go back in and tell the alternate juror she cannot be participating in any way unless she is used to have to replace one of the other jurors.

MR. SNODGRASS: That is my interpretation of what happened.

THE COURT: Yes. Okay. Thank you.

(Recess taken.)

(Open court; parties present, jury not present.)

THE COURT: I have received a message from the bailiff that the jury has reached a verdict. Would the attorneys please come to the courtroom.

Let the record reflect that the attorney for the State, the attorney for the defendant, and the defendant are all present and in the courtroom.

I had received a message from the bailiff that the jury has informed him they've reached a verdict.

Would the bailiff please bring the jury into the courtroom.

All rise.

(Open court; parties and jury present.)

THE COURT: You may be seated. Let the record reflect that the attorney for the State, the attorney for the defendant, the defendant, and all members of the jury are present and seated in the courtroom.

And at this time I would ask you, Madam Foreman, have you reached a verdict on punishment?

THE FOREMAN: Yes.

THE COURT: Would you please hand the verdict form to the bailiff to deliver it to me for inspection. Thank you.

Let me ask you, Madam Foreman, is this verdict, that is included on each of the verdict forms, the unanimous verdict of all members of your jury?

THE FOREMAN: Yes, ma'am.

THE COURT: Would the defendant please stand to receive the verdict.

Cause No. 14-3151, the State of Texas versus Sammy Carl Williams, in the 106th Judicial District Court of Lynn County, Texas.

We, the jury, having found the defendant,

Sammy Carl Williams, guilty of the felony offense of aggravated assault, as alleged in Count 1 of the indictment, assess his punishment at imprisonment in the Institutional Division of the Texas Department of Criminal Justice for a term of ten years and a fine of $10,000.

We, the jury, find that the information contained in the defendant's written, sworn motion for community supervision is true.

We, the jury, having found the information in the defendant's written, sworn motion to be true, recommend that the defendant be placed on community supervision.

Form of Verdict No. 2:

We, the jury, having found the defendant, Sammy Carl Williams, guilty of the felony offense of intoxication assault, as alleged in Count 2 of the indictment, assess his punishment at imprisonment in the Institutional Division of the Texas Department of Criminal Justice for a term of ten years and a fine of $10,000.

We, the jury, find that the information contained in the defendant's written, sworn motion for community supervision is true.

We, the jury, having found the

information in the defendant's written, sworn motion to be true, recommend that the defendant be placed on community supervision.

Form of Verdict No. 3:

We, the jury, having found the defendant, Sammy Carl Williams, guilty of the felony offense of failure to stop and render aid, as alleged in Count 3 of the indictment, assess his punishment at imprisonment in the institutional division of the Texas Department of Criminal Justice for a term of ten years and a fine of $10,000.

We, the jury, find that the information contained in the defendant's written, sworn motion for community supervision is true.

We, the jury, having found the information in the defendant's written, sworn motion to be true, recommend that the defendant be placed on community supervision.

Form of Verdict No. 4:

We, the jury, having found the defendant, Sammy Carl Williams, guilty of the felony offense of aggravated assault, as alleged in Count 4 of the indictment, assess his punishment at imprisonment in the Institutional Division of the Texas Department of Criminal Justice for a term of two years and a fine of

$10,000.

We, the jury, find that the information contained in the defendant's written, sworn motion for community supervision is true.

We, the jury, having found the information in the defendant's written, sworn motion to be true, recommend that the defendant be placed on community supervision.

Form of Verdict No. 5:

We, the jury, having found the defendant, Sammy Carl Williams, guilty of the felony offense of failure to stop and render aid, as alleged in Count 5 of the indictment, assess his punishment at five years in the Texas Department of Criminal Justice and a fine of $5,000.

We, the jury, find that the information contained in the defendant's written, sworn motion for community supervision is true.

We, the jury, having found the information in the defendant's written, sworn motion to be true, recommend that the defendant be placed on community supervision.

Punishment Special Issue No. 1:

We, the jury, having found the defendant, Sammy Carl Williams, guilty in the above-titled and

numbered cause, also do find that Nicolas Mata Sr. has suffered pecuniary loss in the amount of $98,121.85 as a result of the defendant's conduct and, therefore, order that amount be paid in restitution to Nicolas Mata Sr.

Each of these verdict forms, including the Special Punishment Special Issue No. 1, was signed by the foreman of the jury.

Is there a request to poll the jury?

MR. SNODGRASS:  No, Your Honor.

MR. MUNK:  No, Your Honor.

THE COURT:  You may be seated.

We have reached the end of your responsibilities in this.  However, I am going to proceed with the sentencing of the defendant based on the verdict that you have rendered.  And is it agreeable with you for you to stay until I do the sentencing?

THE JURY:  Yes, ma'am.

THE COURT:  Okay.  And let me ask you, Mr. Williams, are you satisfied with the legal representation that's been provided by your attorneys?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  The Court does find that a deadly weapon was used in the commission of the

offense in this case. And also -- I guess that's my only finding at this time.

Let the record reflect that in Cause Number 14-3151, the State of Texas versus Sammy Carl Williams, that the attorney for the State of Texas, the attorney for the defendant, and the defendant are present in the courtroom.

This case was tried before this Court and a jury beginning on Friday, August 15th, 2014.

Sammy Carl Williams, you came before this Court and a jury and entered a plea of not guilty to the offenses as set out in the indictment. The evidence was submitted, and the jury was charged by the Court. And after de- -- deliberating, the jury has returned a verdict finding you guilty of those offenses as set out in the indictment.

And your punishment was assessed also by this jury in the verdict forms that have been provided in the Court's charge to the jury on the punishment phase.

It is the judgment of this Court that you are guilty in Cause Number 14-3151 and that you be punished in accordance with the jury's verdict.

Do you have any legal reason why sentence should not be pronounced?

MR. SNODGRASS: No, Your Honor.

THE COURT: Finding nothing to bar the pronouncement of sentence against you, Sammy Carl Williams, I sentence you to serve, according to the verdict, ten years to the Texas Department of Criminal Justice in Count 1.

In Count 2, ten years in the Department of Criminal Justice.

In Count 3, ten years in the Texas Department of Criminal Justice.

Count 4, two years in the Texas Department of Criminal Justice.

Count 5, five years in the Texas Department of Criminal Justice.

In Counts 1, 2, 3, 4, there is also a fine in the amount of $10,000 in each of those. In Count 5, the fine is $5,000.

The jury has recommended in this case that you be placed on community supervision, and they have recommended that in each count -- 1, 2, 3, 4 and 5. The Court suspends the sentence in each of those counts and places you under community supervision.

In Count 1, period of ten years.

Count 2, ten years.

Count 3, ten years.

Count 4, two years.

And Count 5, five years.

In addition, the jury has found that Nicolas Mata Sr. has suffered pecuniary loss in the amount of $98,121.85.  The Court orders restitution in that amount.

You may be seated.  I need to give some conditions of community supervision at this time.

MR. MUNK:  Judge, may we approach?

THE COURT:  You may.

(Bench conference:)

MR. MUNK:  Judge, is it too late to poll? Because the jury is very confused.

THE COURT:  I already asked them.  They said no.

MR. MUNK:  I know --

THE COURT:  I mean, I asked you-all if you wanted a poll and you-all said no.

MR. MUNK:  I don't believe that this is the unanimous verdict of the jury, Your Honor.

THE COURT:  It was answered that it was.

MR. SNODGRASS:  Your Honor, I think the jurors' verdicts have been received.

THE COURT:  It has been, and it has been read.

MR. MUNK: I know. But he hasn't been sentenced yet.

THE COURT: Yes, he has. What do you think I just did?

MR. MUNK: The jury ought -- Judge, I don't think it's a unanimous verdict --

THE COURT: Well, I asked them, and they said yes.

MR. MUNK: Well, the foreman said yes.

THE COURT: Yes. And she's the one that's responsible for answering that.

MR. MUNK: But don't I have a right to ask for a poll?

THE COURT: You did. And you didn't ask for it. I asked if -- if anyone requested a poll, and nobody said yes.

THE BAILIFF: The foreman of the jury is telling me that they didn't do that right, that they wanted him to get ten years and then probation.

THE COURT: There's not such a thing as that.

THE BAILIFF: Okay. Well, that's what she was saying.

(Within hearing of the jury.)

THE COURT: Would the attorneys please

approach.

(Bench conference:)

THE COURT: The sheriff tells me that the foreman of the jury has told him that that is not what they -- the way I've said that, is not what they meant. They -- what they were doing was ten years and then he would have probation after that. I don't know what to do at this point, to be truthful.

MR. MUNK: Could I suggest two suggestions, Judge? First of all, I think the --

THE COURT: They were given instructions.

MR. MUNK: I understand.

But at this point, I think the standard is manifest injustice for a mistrial. I would call what's happened here manifest injustice. I would still prefer a poll and send them back, if that is not the unanimous verdict of the jury. We could avoid a mistrial.

MR. SNODGRASS: Your Honor, the verdict's been received. I don't know in any way, shape, form or fashion how I can agree to anything other than the verdict that's been received by this Court. If -- because I would be -- I can't imagine any Court saying I wasn't per se ineffective agreeing for a Court that had already received a verdict.

THE COURT: And, quite honestly, I don't know -- I mean, I have received a verdict. I said I was receiving it. I have read it -- not only read it, but I have sentenced the defendant according to the verdict. And I have also said now all I have left to do is place the conditions on the community supervision --

MR. SNODGRASS: And, Your Honor, since you've dismissed the jurors --

THE COURT: -- and we gave them --

MR. MUNK: In that case, Judge, I would also ask for a motion for a new trial, citing, again, manifest injustice. This is not the intent --

MR. SNODGRASS: This isn't the point to make or -- I don't think.

THE COURT: I think it was very -- it's very plain. There is no question about the way these are filled out. And they had the opportunity to send out notes, which they did, and they were told to read their instructions and follow all of the instructions and the charge and --

MR. MUNK: I understand.

But what is clear, Judge, is that this was not the unanimous verdict of the jury.

THE COURT: Quite honestly, there should not be any communication coming from them right now.

This has been very loose about what has been allowed to be communicated. There should not have been a communication to the sheriff at this point. I'm -- right now -- I'm the one that has just sentenced him. I'm preparing to set the conditions, and I think that's where we are.

MR. MUNK: Judge, can I get a ruling on my motion for a new trial and mistrial?

THE COURT: Yes. Denied.

(Bench conference ends.)

THE COURT: Including the conditions -- terms and conditions that are the usual and typical ones of the community supervision corrections department, the Court wants to make sure that these conditions are a part of -- of the community supervision.

There is to be intensive supervision for a period of at least two years. That means for the defendant to report weekly for at least a period of two years, that the -- anything beyond that should be at the discretion of the community supervision department;

The Court orders home monitoring;

Orders a SCRAM device to be placed on the defendant for the defendant to pay for that;

The Court orders electronic monitoring of the defendant;

Court orders a -- an interlock device with camera to be installed on any vehicle that the defendant drives.

The Court is to -- the Court orders that there is to be individual and/or group counseling at the discretion of the probation department.

The Court orders a curfew for the defendant to be in his residence between the hours of 9:00 p.m. and 7:00 a.m. unless he is at work or traveling directly to or from work.

The Court orders that the community supervision department report any violations of any of the conditions that the Court has placed on the defendant, as well as any violations of the general terms and conditions that the community supervision department has, that that -- any of those violations reported directly to this Court.

The Court orders -- and the Court is -- understands that it is one of the general conditions or terms of community supervision, that the defendant would submit to any tests that are required by the community supervision department and to pay for those testing of alcohol or any drugs.

The Court also orders community service hours in the amount of 1,000 hours to be performed by

this defendant at the rate set out by his community supervision officer.

Would the attorneys and Mr. Schoemann, the community supervision officer, please approach?

(Bench conference:)

THE COURT: I can't think -- I don't see a reason to have the home breath monitor when he has the SCRAM device.

THE PROBATION OFFICER: Correct. The SCRAM and the electronic monitor is basically going to be -- to do the same thing.

THE COURT: Oh, okay.

THE PROBATION OFFICER: They'll cancel themselves out.

THE COURT: We'll do away with one of those, whichever --

THE PROBATION OFFICER: Okay.

MR. SNODGRASS: SCRAM would test for alcohol.

THE COURT: And the SCRAM tests for alcohol. And the electronic monitoring just -- does the SCRAM show where you are also?

THE PROBATION OFFICER: The SCRAM will tell me the times that he's submitted to the test, but the electronic monitor then would tell me his location.

THE COURT: I want to know his location, so we need both of those.

THE PROBATION OFFICER: Okay. Also, Judge, just for clarification, is there going to be a driver's license suspension for the intoxication assault?

THE COURT: Yes.

THE PROBATION OFFICER: Okay. Also, the DWI and DWI intervention class?

THE COURT: Yes. Any classes that you recommend.

THE PROBATION OFFICER: Okay. I think those have to be separate conditions.

THE COURT: Okay. Let me write them down, because I was going off of a list that I had. DWI classes.

THE PROBATION OFFICER: DWI and DWI intervention.

THE COURT: And intervention.

THE PROBATION OFFICER: And then the DL suspension, if you're going to order that.

THE COURT: Off the BAC?

THE PROBATION OFFICER: Correct.

THE COURT: Okay. I forgot about that.

MR. SNODGRASS: Your Honor, there is also

a requirement --

MR. MUNK: Jail time --

MR. SNODGRASS: -- of a minimum of 30 days jail as to the intoxicated assault count.

THE COURT: Right.

MR. SNODGRASS: And you can impose shock -- I keep misspeaking -- jail as a condition, up to 180 days as to any of them, but as to the intoxicated assault, there's a requirement of at least 30 days.

THE COURT: Okay. Thirty days. And how many times can I do that based on --

MR. MUNK: It's per case --

MR. SNODGRASS: I think you can do up to 180 on any case.

THE COURT: Okay. I'm going to put 180, then.

MR. SNODGRASS: Well, that's at your discretion, then.

MR. MUNK: I believe the case count --

THE COURT: Well, I'm not going to do 180 times five. Okay.

THE PROBATION OFFICER: And if you'd also specify -- unless you work it out with the sheriff or whatever you tell him, whenever he's supposed to report to the jail if it's going to be today or whatever.

THE COURT: Okay. Sheriff Franklin, would you please approach.

I think it should be today.

THE PROBATION OFFICER: I -- if it's going to be day for day or credit two for one, all that stuff. It has a tendency to pop up later on.

THE COURT: Will you be able to take him into custody today by -- do you have a place if I sentence him to 180 days in jail?

THE BAILIFF: I sure can.

THE COURT: Okay.

(Bench conference ends.)

THE COURT: As conditions of community supervision, the Court also orders for the defendant to participate in DWI classes as recommended by the probation department. Also, for DWI intervention.

The Court orders a suspension of defendant's driver's license for a period of one year. That is because the blood alcohol content was point -- I think, it was .226.

The Court also orders as a condition of his probation that he be incarcerated for 180 days in the Lynn County jail and that would need to be served day for day with no time for good credit -- I mean, no good time for conduct -- no time for good conduct. And

that will begin today. I think that takes care of the conditions.

Do we have either the victim or a member of the victim's family who wishes to speak at this time or a victim impact statement?

MR. MUNK: Judge, Tommy Binford is going to read it on behalf of the family.

THE COURT: We have a victim impact statement?

MR. BINFORD: Yes, ma'am.

THE COURT: You may proceed with that.

MR. BINFORD: Thank you, Your Honor.

(Victim's impact statement read.)

THE COURT: Is there anything else?

MR. MUNK: Your Honor, I'm renewing my motion for new trial and mistrial. I believe this is a manifest injustice and this is not a unanimous verdict of this jury, Your Honor.

THE COURT: Well, based on the question that I had asked at the appropriate time to the foreman of the jury and was told that there was, and a requesting a poll of the jury, no one indicated one, the Court denies that motion.

If there's nothing else, this hearing is adjourned.

(Within hearing of the jury.)

THE COURT: And let me say to you jurors, the Court previously instructed you that strict secrecy should be observed. That was not only for you not to speak to anyone else, but for you not even to speak to each other until you were released to go and told you could begin deliberations. And the alternates were also to observe that same secrecy, but they could only observe the deliberations.

I'm now about to discharge you. And after that discharge, you are free to discuss the case, you're released from your secrecy and your deliberations with anyone. However, you are also free to decline to discuss the case and your deliberations if that is what you wish.

After you're discharged, it would be lawful for the attorney's or other persons to question you to determine whether any of the standards for jury conduct, which I've given you in the instructions throughout the course of the trial, were violated, and to ask you to give an affidavit to that affect.

What I'm telling you is that you're free to discuss or not to discuss these matters. And you're free to give an affidavit or to decline to give an affidavit.

I know this has not only been an inconvenience for you, but that it has been a very difficult case to listen to, to participate in, and to feel that you were the ones to make the decisions about the facts in the case and the verdict.

We cannot operate our system of justice without people who are willing to serve as jurors.

We tried the case according to our rules. We tried not to waste your time, but to give the time that was needed to make sure that we had a fair and impartial trial for everybody.

You were charged in the guilt/innocence phase. You were charged in the punishment phase. And you returned verdicts in both of those, with both of those charges, several forms of verdict in each one, in which your answers were quite plain as they were written on the verdict forms.

Because we cannot operate our justice system that we're so proud of without you -- I know that people kind of cringe when they get a summons for jury duty, but if you ever stop and think, the judicial branch of our government is the only one in which the people actively participate.

You can write, call, communicate some way with those in the executive branch, whether it's on the

state level or the federal level. You can also do that with those in the legislative branch, again, whether it's in our state legislature or Congress.

But the judicial system is the one that really, ultimately, is closest to every system and ultimately that is the one system in which the citizens come in and actively participate. May it ever be so in our country.

At this point you are finally discharged. I personally thank you for your service and thank you on behalf -- I'll speak on behalf of all of the citizens of Lynn County, for your being willing to give your time and your thoughts to participate in the public administration of justice. You are now discharged. Thank you very much.

All rise.

(Jury released)

THE COURT: We are adjourned. Thank you very much.

(Proceedings concluded.)

STATE OF TEXAS

COUNTY OF LYNN

I, J'Lyn Sauseda, Official Court Reporter in and for the 106th District Court of Lynn County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, offered by the respective parties.

I further certify that the total cost for the preparation of this Reporter's Record is $5,268.00 and was paid/***will be paid*** by Michael Munk, District Attorney.

                              /s/ J'Lyn Sauseda

                              J'Lyn Sauseda, CSR
                              Texas CSR 7890
                              Official Court Reporter
                              106th District Court
                              Lynn County, Texas
                              400 South 1st, Suite 302
                              Lamesa, Texas 79331
                              Telephone: 806-872-3740
                              Expiration: 12/31/15

# APPENDIX B



# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-14-00333-CR

THE STATE OF TEXAS, APPELLANT

V.

SAMMY CARL WILLIAMS, APPELLEE

On Appeal from the 106th District Court
Lynn County, Texas
Trial Court No. 14-3151, Honorable Carter T. Schildknecht, Presiding

September 22, 2015

## OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Appellee, Sammy Carl Williams, was tried on five felony counts arising out of a motor vehicle collision. The jury found appellee guilty of two counts of aggravated assault,[1] intoxication assault,[2] and two counts of failure to stop and render aid.[3] Further, the jury found that appellee used a deadly weapon in each of the offenses for

---

[1] *See* TEX. PENAL CODE ANN. § 22.02(a)(2) (West 2011).

[2] *See id.* § 49.07(a)(1) (West 2011).

[3] *See* TEX. TRANSP. CODE ANN. § 550.021(a) (West Supp. 2014).

which they found him guilty. After hearing evidence on the issue of punishment, the jury returned sentences of ten years' confinement and a fine of $10,000 on count 1 (aggravated assault), ten years' confinement and a fine of $10,000 on count 2 (intoxication assault), ten years' confinement and a fine of $10,000 on count 3 (failure to stop and render aid), two years' confinement and a fine of $10,000 on count 4 (aggravated assault), and five years' confinement and a fine of $5,000 on count 5 (failure to stop and render aid). On each punishment verdict form, the jury found that appellee's sworn motion for community supervision was true and, on each punishment verdict form, the jury recommended that appellee be placed on community supervision. The State appeals from the judgment placing appellee on community supervision. We dismiss the State's appeal for want of jurisdiction.

## Factual and Procedural Background

The facts that underline appellee's conviction are not at issue before this Court. We will discuss only so much of the factual background as is necessary for this opinion.

All charges filed against appellee arose out of a collision between appellee's vehicle and the vehicle belonging to the Mata family. As a result of the collision, a minor who was riding in the Mata vehicle had his leg amputated and the driver of the Mata vehicle suffered broken ribs. Appellee fled the scene and was apprehended later. Initially, the State filed a single indictment against appellee alleging the six different counts.[4] After plea negotiations broke down, the State reindicted appellee in three separate indictments which alleged the same offenses as the initial single indictment.

---

[4] Prior to trial, the State dismissed a count alleging injury to a child.

2

Appellee filed a motion to consolidate all offenses for trial. The trial court granted the motion. The State filed a petition for writ of mandamus with this Court seeking to order the trial court to withdraw her order of consolidation. We denied the mandamus application. *See In re Munk,* No. 07-14-00308-CV, 2014 Tex. App. LEXIS 9085, at *5 (Tex. App.—Amarillo Aug. 15, 2014, no pet.) (mem. op.).

The matter proceeded to trial on a single indictment alleging the five counts previously outlined. After the jury had found appellee guilty of each count and the jury had heard the evidence regarding punishment, the jury advised the trial court it had reached its verdict on punishment. The jury was recalled to the courtroom, and the presiding juror advised the trial court that they had reached a verdict. The presiding juror was then asked if the verdict contained on each of the separate five verdict forms was the unanimous verdict of the jury, to which she replied, "Yes, ma'am." The trial court then read the jury's punishment verdict on each of the five counts on which appellee had been convicted. After reading the verdicts aloud, the trial court asked, "[I]s there a request to poll the jury?" Each party answered, "No, Your Honor." The trial court advised the jury that the jury had reached the end of their responsibilities but allowed the jurors, if they desired, to remain in the courtroom. Immediately thereafter, the trial court sentenced appellee in accordance with the verdicts received from the jury.

It was only after appellee had been sentenced that the State's attorney approached the bench and asked, "[I]s it too late to poll?" The trial court advised the State's attorney that he had declined to poll the jury after the verdict had been received by the trial court. The State contended that the jury was confused and that he did not believe that this was a unanimous verdict, whereupon, the trial court reminded the

3

attorney that the presiding juror had stated it was a unanimous verdict.  The colloquy between the State's attorney and the trial court continued for several minutes.  At the conclusion, the bailiff advised the trial court that the presiding juror had indicated that the jury wanted appellee to serve his terms of confinement and then receive probation.  The trial court then stated, "There's no such thing as that."  After more discussion, the State moved for a mistrial, which the trial court denied.

The State now appeals via seven issues.  The State's first six issues stem from the events that followed the jury's return of the verdicts on punishment.  In these issues, the State attacks the failure of the trial court to conduct a jury poll, either upon the State's request following receipt of the verdicts or *sua sponte*, that the verdict entered was not the verdict intended by the jury, that the verdict rendered by the jury could not be entered because of the deadly weapon finding, or that the manifest injustice of the verdict demands a new trial.  The State's seventh issue contends that three indictments were unlawfully consolidated for trial.

For the reasons that we set forth below, we will dismiss the State's appeal for lack of jurisdiction.

## Jurisdiction

As a reviewing court, we have the duty to make an initial determination of whether the Court has the jurisdiction to resolve the matter presented before it.  *See State v. Roberts,* 940 S.W.2d 655, 657 (Tex. Crim. App. 1996) (en banc), *overruled on other grounds by State v. Medrano,* 67 S.W.3d 892, 901-03 (Tex. Crim. App. 2002) (en banc).  The right to appeal is a right conferred and defined by statute.  *See Marin v.*

4

*State,* 851 S.W.2d 275, 278 (Tex. Crim. App. 1993). This is particularly important where the appealing party, the State, has a limited right of appeal. *See* TEX. CODE CRIM. PROC. ANN. art. 44.01 (West Supp. 2014) (setting forth when the State may appeal).[5]

A review of the State's first six issues leads to the conclusion that the State is contending that the sentence imposed by the trial court was improper because it did not reflect what the State contends was the true intention of the jury. Classifying the State's issues as such is important because of the limitation of the State's right of appeal as set forth in the Texas Code of Criminal Procedure. *See id.* Article 44.01 provides, as is relevant to this discussion, that "[t]he [S]tate is entitled to appeal a sentence on the ground that the sentence is illegal." Art. 44.01(b). As pointed out by the Texas Court of Criminal Appeals in *State v. Baize*, "the Court of Appeals may look behind the State's facial allegation of what it is appealing to determine whether it is in fact 'appealing a sentence and not something else.'" *State v. Baize,* 981 S.W.2d 204, 206 (Tex. Crim. App. 1998) (en banc) (per curiam) (differentiating between "assessment of punishment" and "sentence" and quoting *State v. Ross,* 953 S.W.2d 748, 750 (Tex. Crim. App. 1997) (en banc)). *Ross* directs that our jurisdiction turns on whether the State appeals a "sentence." *Ross,* 953 S.W.2d at 949. If we determine the State is appealing a "sentence," we may then address the issue of the legality of the sentence on its merits. *Id.*

In answering the questions posed by *Ross* and while performing the analysis required by *Baize*, we first look at how the term "sentence" is defined. Article 42.02

---

[5] Further reference to the Texas Code of Criminal Procedure will be by reference to "Article ____," "Art. ____," or "article ____."

5

says that a sentence is that part of the judgment, or order revoking a suspension of the imposition of a sentence, that orders that the punishment be carried into execution in the manner prescribed by law. Art. 42.02. According to *Baize*, a sentence is the punishment, not the act of assessing the punishment. *Baize,* 981 S.W. at 206. In *State v. Kersh*, the Texas Court of Criminal Appeals delineated what a sentence is by explaining that the sentence "consists of the facts of the punishment itself, including the date of commencement of the sentence, its duration, and the concurrent or cumulative nature of the terms of confinement and the amount of fine, if any." *State v. Kersh,* 127 S.W.3d 775, 777 (Tex. Crim. App. 2004) (en banc).

With the foregoing guidance in mind, we turn to the issues presented by the State. Issues one through six complain about (1) the failure of the trial court to poll the jury after the verdict had been received and sentence pronounced, (2) that the written verdict was not the true intention of the jury, (3) the failure of the trial court to order the jury to deliberate further, (4) the verdict was not assented to by all twelve jurors, (5) trial court's sentence was illegal because a deadly weapon finding had been returned, and (6) the verdict was manifestly unjust. When the issues are examined in detail, the following becomes clear: the State is complaining about the process of obtaining the verdicts; specifically, it complains about the events that followed the trial court's actual receipt of the verdict.

The record is clear that the trial court received the verdict and ascertained through questioning the presiding juror that the verdict was unanimous. Both parties declined the trial court's invitation to poll the jury. Following that, the trial court sentenced appellee to the sentences returned by the jury. No one disputes that notion.

Further, no one disputes that the sentences handed down by the jury were legal sentences, that is to say, within the parameters for the minimum and maximum sentences set by the legislature. Only after the trial court pronounced sentence against appellee, and then proceeded to go over the terms and conditions of probation, did any issue arise. No matter how you couch the issues, at the end of the day, the State is complaining about the process of arriving at the jury verdicts on each guilty verdict that resulted in appellee being granted probation. The jury returned the verdicts that the trial court read and now the State asserts that these were not what the jury intended. As was stated in *Baize*, a challenge to the procedure leading to imposition of the sentence does not provide the State with standing to appeal pursuant to article 44.01(b). *See Baize*, 981 S.W.2d at 206. As close as the State comes to appealing the sentence is in the fifth issue when it contends that the trial court ignored the jury's verdict in granting probation and thereby sentenced the defendant to an illegal sentence. However, a review of the issue reveals that the State's issue is prefaced on the failure of the trial court to do those things complained of in issues one through four. Again, this is a complaint about the process of arriving at the verdict. *See id.* For the reasons heretofore stated, we are without jurisdiction to entertain the State's first six issues.

The State's seventh issue is directed at the trial court's granting appellee's motion to consolidate three indictments for trial. The State argues that the act of consolidation for trial the three indictments into one single indictment meant that the two consolidated indictments were dismissed. Thus, according to the State's theory, they may appeal pursuant to article 44.01(a)(1). *See* art. 44.01(a)(1). The provision in question provides as follows:

7

(a) the state is entitled to appeal an order of a court in a criminal case if the order:

> (1) dismisses an indictment, information, or a complaint or any portion of an indictment, information or complaint

What the State has not provided the Court is any authority for the proposition that, for purposes of article 44.01(a)(1), an order of consolidation operates or serves to dismiss the charges contained in the indictments that were consolidated into a single indictment. Indeed, all of the authority submitted by the State goes to the question of whether a trial court abuses its discretion in ordering a consolidation of indictments for trial. This issue was addressed by this Court in a mandamus action brought by the State before the instant trial commenced. *See In re Munk*, 2014 Tex. App. LEXIS 9085, at *5. In that opinion, we found that the trial court did not abuse its discretion in granting the appellee's motion to consolidate the three indictments for trial. Further, the record reflects that appellee was called to enter a plea to each of the charges contained in the three previous indictments.[6] Finally, the judgment reflects that appellee was found guilty of each of the five charges and a jury returned a punishment verdict on each of the five charges. As a result, we find there was no dismissal of an indictment within the meaning of article 44.01(a)(1) in the order of consolidation. Accordingly, the State has not brought an appeal of the dismissal of an indictment for purposes of article 44.01(a)(1) and we are without jurisdiction to entertain the question presented by the State's seventh issue.

---

[6] The exception being the injury-to-a-child count that the State dismissed prior to trial.

8

Conclusion

Having determined that the State's appeal does not properly invoke the jurisdiction of the Court, we dismiss the appeal for want of jurisdiction.


Mackey K. Hancock
Justice


Publish.

# APPENDIX C





Caution
As of: Oct 20, 2015

THE STATE OF TEXAS v. JOEL RAY BAIZE, Appellant

NO. 926-97

COURT OF CRIMINAL APPEALS OF TEXAS

*981 S.W.2d 204*; *1998 Tex. Crim. App. LEXIS 165*

December 9, 1998, Delivered

**PRIOR HISTORY:** [**1] FROM THE SEVENTH COURT OF APPEALS. LUBBOCK COUNTY.

**DISPOSITION:** Affirmed.

**COUNSEL:** Daniel W. Hurley, Aaron R. Clements, Lubbock.

John S. Klassen, DA Pro Tem, Office of the Attorney General, Austin.

**JUDGES:** McCormick, P.J. filed dissenting opinion in which Mansfield, J. and Womack, J. joined. Keller, J. dissents.

**OPINION**

[*205] ON STATE'S'S PETITION FOR DISCRETIONARY REVIEW

PER CURIAM OPINION

Appellee was convicted by a jury of criminally negligent homicide, and the trial court assessed punishment at sixty days in jail and a $ 500 fine, both of which were probated. The State appealed pursuant to *Article 44.01(b), V.A.C.C.P.*, claiming the sentence was illegal because the trial court allowed Appellee to untimely change his election for the jury to assess punishment over the State's objection. [1] The Court of Appeals dismissed the appeal for lack of jurisdiction. *Baize v. State, 947 S.W.2d 307* (Tex.App.--Amarillo 1997). We

granted the State's petition for discretionary review to determine the whether State may appeal the trial court's assessment of punishment under these circumstances.

> 1 *Article 37.07, § 2(b), V.A.C.C.P.* provides that the trial court shall assess punishment unless the defendant elects in writing prior to the beginning of voir dire for the jury to assess punishment. However, "if a finding of guilty is returned, the defendant may, with the consent of the attorney for the state, change his election of one who assesses the punishment."

[**2]

Article 44.01(b) provides, "The state is entitled to appeal a sentence in a case on the ground that the sentence is illegal." The Court of Appeals addressed the meaning of "illegal sentence," applying a statutory construction analysis. See *Boykin v. State, 818 S.W.2d 782 (Tex.Cr.App. 1991)*. It determined that when the State was given the right to appeal in 1987, "illegal sentence" had acquired a technical or particular meaning -- a sentence the trial court had no jurisdiction to levy or one which violates a fundamental [*206] constitutional right. *Baize, 947 S.W.2d at 311*.

At the time of its opinion, the Court of Appeals did not have the benefit of our decision in *Ross v. State, 953 S.W.2d 748 (Tex.Cr.App. 1997)*, in which we held that for purposes of Art. 44.01(b), "sentence" has the same meaning as in *Article 42.02, V.A.C.C.P.* The current version of Art. 42.02 provides, "The sentence is that part of the judgment, or order revoking a suspension of the im-

Page 2

981 S.W.2d 204, *; 1998 Tex. Crim. App. LEXIS 165, **

position of a sentence, that orders that the punishment be carried into execution in the manner prescribed by law." The State acknowledges this definition of "sentence," and it contends that the plain meaning of "illegal" is "not according [**3] to or authorized by law." From this it reasons that because the trial court's assessment of punishment was not according to or authorized by Art. 37.07, § 2(b), an illegal sentence resulted.

The State's analysis is flawed for two reasons. First, it attempts to define "illegal sentence" instead of "sentence". [2] In Ross, we explained that when a court of appeals contemplates its jurisdiction under Art. 44.01(b), it must determine whether the State is appealing the sentence or whether it is appealing something other than the sentence. *Id. at 750.* We pointed out that Art. 44.01(b) allows the State to appeal "a sentence not *when* a sentence is illegal, but *on the ground* that it is illegal." Ibid. (emphasis in original). Second, the State's argument incorrectly substitutes "assessment of punishment" for "sentence." Again, this is contrary to Ross, which held that "sentence" has a narrow meaning. Consistent with our holding in Ross, the meaning of sentence in Art. 44.01(b) is not the same as the act of assessing punishment. [3]

> 2 The State's focus on the meaning of "illegal sentence" instead of "sentence" is understandable, since the Court of Appeals took this approach in deciding the issue.

[**4]

> 3 The State submits that Art. 44.01 should be construed liberally in keeping with the legislature's intent to grant the State extensive appellate rights. It argues the legislature intended that the State's rights under Art. 37.07, § (2)(b) be realized. We addressed this concern in Ross, when we construed the meaning of "sentence". *Ross, 953 S.W.2d at 750-51.* In the present situation, the State is not without a remedy, as it may enforce a ministerial duty through mandamus or prohibition. We appreciate the State's complaint that mandamus is not a fail-safe means of correcting this type of error. As the State points out, the trial judge can prevent the prosecutor from seeking mandamus relief by refusing to grant a recess in the proceedings. However, the shortcomings of mandamus do not permit this Court to fashion another remedy for procedural violations when the legislature has not seen fit to do so. Furthermore, even if the Court of Appeals exercised its jurisdiction in this case and reversed and remanded for a new trial, Appellee could arguably elect for the trial court to assess punishment, regardless of the State's consent. See *Saldana v. State, 826 S.W.2d 948 (Tex.Cr.App.*

*1992)*(defendant is not bound by punishment election made at original trial when cause is reversed and remanded for new punishment hearing).

[**5] Although it could be argued that jurisdiction is vested by the State's mere assertion that it is appealing the sentence, the Court of Appeals must determine whether it has jurisdiction. Therefore, the Court of Appeals may look behind the State's facial allegation of what it is appealing to determine whether it is in fact "appealing a sentence and not something else." *Ross, 953 S.W.2d at 750.* In the instant case, even if the trial court's act of assessing punishment was not authorized, there is no showing that the punishment itself or the order carrying the punishment into execution was illegal. Thus, the State is not appealing the sentence, but the procedure leading to the assessment of punishment. The Court of Appeals does not have jurisdiction under these circumstances.

In addition to its argument that illegal assessment of punishment and illegal sentence are synonymous, the State also argues that this particular error in assessment of punishment renders the resulting sentence illegal. We need not address this claim because it deals with the merits of the appeal. The issue before us is jurisdictional--whether the State is appealing a sentence on the ground that it is illegal--not [**6] whether the sentence is illegal. *953 S.W.2d at 749-50.*

The Court of Appeals did not have jurisdiction under Art. 44.01(b), because the State was not appealing the sentence on the [*207] grounds that it was illegal. Accordingly, the judgment of the Court of Appeals dismissing the appeal is affirmed.

PER CURIAM

DELIVERED: December 9, 1998

**DISSENT BY:** McCORMICK

**DISSENT**

**DISSENTING OPINION ON STATE'S**

**PETITION FOR DISCRETIONARY REVIEW**

**I dissent to affirming the Court of Appeals' decision to dismiss the State's appeal.** We granted the State's petition for discretionary review to determine whether the State may appeal the trial court's assessment of punishment when it was unauthorized by *Article 37.07, Section 2(b), V.A.C.C.P.* **I disagree with the majority's reasoning and would therefore reverse the decision of the Court of Appeals.**

Page 3

981 S.W.2d 204, *; 1998 Tex. Crim. App. LEXIS 165, **

**The Court of Appeals chose not to exercise jurisdiction in this case because it decided that the State had failed to satisfy the indicia of an illegal sentence.** The Court of Appeals concluded that "an illegal sentence is, at the very least, one which the court had no jurisdiction to levy or one which violates a fundamental constitutional right." *State* [**7] *v. Baize, 947 S.W.2d 307, 311* (Tex.App.-Amarillo 1997, pet. granted). The Court of Appeals cited to numerous cases supporting its decision that an "illegal sentence" involves more than procedural error and that an "illegal sentence" must either trammel jurisdictional limitations or fundamental constitutional principles. *Id. at 310.* In this case, the Court of Appeals has narrowly construed the scope of Article 44.01(b), and has therefore failed to realize fully the legislative intent behind the statute. The issue before us is to decide whether the State may appeal, pursuant to *Article 44.01(b), V.A.C.C.P.*, the trial court's assessment of punishment based upon the ground that the sentence is illegal.

In *State v. Ross, 953 S.W.2d 748*, this Court claims to have applied the plain meaning to the term "sentence." The majority in that case elected to rely upon the definition of "sentence" as defined in *Article 42.02, V.A.C.C.P.* which states, "The sentence is that part of the judgment, or order revoking a suspension of the imposition of a sentence, that orders that the punishment be carried into execution in the manner prescribed by law." This Court held that a sentence only includes [**8] *facts* regarding length of punishment and assessment of a fine. However, a "sentence" would not include other aspects of the judgment which *merely affect* the terms of punishment (i.e. the jury verdict, the offense for which defendant is convicted and any affirmative findings). *953 S.W.2d at 750.* The majority in *Ross* established that a "sentence" would not incorporate an affirmative deadly weapon finding, and that the trial court's failure to make the deadly weapon finding in the judgment was therefore unappealable by the State under *Section 44.01(b).* As a result, a narrow interpretation of the statute was created contrary to legislative intent. The majority's decision did nothing more than to define a "sentence" to be only that "portion of the criminal judgment setting out the terms of punishment." *953 S.W.2d at 750-51.*

It is incumbent upon this Court to discover and effectuate the legislative intent or purpose of an underlying statute. *Boykin v. State, 818 S.W.2d 782 (Tex.Cr.App. 1991).* In doing so, we must focus our attention on the literal text of the statute in question and attempt to discern the fair, objective meaning of that text at the time of its enactment. *Id* [**9] *. at 785.* Under *Boykin*, we must apply the "plain meaning" to the statute unless application of the statute's literal text would lead to absurd consequences that the Legislature could not possibly have intended. *Id. at 785.* When reviewing the literal text of the statute, this Court will read the words and phrases of the statute in context and construe them "according to the rules of grammar and common usage." *Tex. Gov't Code Ann., Section 311.011(a).* And where the statute is "clear and unambiguous, the Legislature must be understood to mean what it has expressed, and it is not for the courts to add or subtract from such a statute." *Coit v. State, 808 S.W.2d 473, 475 (Tex.Cr.App. 1991).* The plain meaning of the terms in Article 44.01(b) permits the State to appeal this sentence because the sentence imposed by the trial court is illegal. The dictionary defines "illegal" as "not authorized [*208] by law; illicit; unlawful; contrary to law." *Black's Law Dictionary* (4th ed.) 882 (1951). [1] The sentence in this case is illegal because it is not authorized by law, namely in accordance with *Article 37.07, Section 2(b), V.A.C.C.P.*, which provides:

> 1  *See Fairow v. State, 943 S.W.2d 895, 904-05 (Tex.Cr.App. 1997)*(Meyers, J., cites to the Webster Dictionary definition of "opinion" to resolve issue presented regarding lay witness opinion testimony); *State v. Johnson, 939 S.W.2d 586, 587 (Tex.Cr.App. 1996)*(Meyers, J., cites to the New Merriam-Webster Dictionary definition of "other" to address exclusionary statute prohibiting admission of evidence illegally obtained by an officer or other person); and *Bingham v. State, 915 S.W.2d 9, 10 (Tex.Cr.App. 1994)*(Meyers, J., applies the New Merriam-Webster Dictionary definition of "testimony" for purposes of corroboration requirement for testimony by accomplice).

[**10]  "Except as provided in Article 37.071, if a finding of guilt is returned, it shall then be the responsibility of the judge to assess the punishment applicable to the offense; provided, however, that (1) in any criminal action where the jury may recommend probation and the defendant filed his sworn motion for probation before the trial began, and (2) in other cases where the defendant so elects in writing before the commencement of the voir dire examination of the jury panel, the punishment shall be assessed by the same jury, except as provided in Article 44.29. If a finding of guilty is returned, the defendant may, *with the consent of the attorney for the state*, change his election of one who assesses the punishment." (Emphasis added).

In the case at bar, the State did not consent to appellee changing his election of who assessed punishment. The trial court dismissed the jury and assessed a sentence without the consent of the State. This violated Article

Page 4

981 S.W.2d 204, *; 1998 Tex. Crim. App. LEXIS 165, **

37.07, *Section 2(b)*, and is therefore an illegal sentence which is appealable by the State.

The majority in the instant case fails to apply the plain meaning to the statute, but rather continues to follow the narrow [**11] construction of Article 44.01 established in *Ross*. This Court should overrule the holding in *Ross*. It is for these reasons briefly mentioned that I respectfully dissent.

McCormick, Presiding Judge

(Delivered December 9, 1998)

En Banc

**Mansfield and Womack, JJ., join this dissenting opinion**